COLIN and Alan K., Minors by JOHN
K., Their Next Friend and Father,
Plaintiffs, Appellees,

v.

Thomas C. SCHMIDT, et al.,
Defendants, Appellees.

Middletown School Committee, et
al., Appellants.

COLIN K., et al., Plaintiffs, Appellants,

v.

Thomas C. SCHMIDT, et al.,
Defendants, Appellees.

Nos. 82-1461, 82-1475.

United States Court of Appeals,
First Circuit.

Argued May 6, 1983.

Decided July 25, 1983.

* Chief Judge, U.S. Court of International Trade, sitting by designation.

Joseph B. Going, Newport, R.I., with whom Going & Miller, Ltd., Newport, R.I., was on brief, for Middletown School Committee.

Patricia M. Beede, Newport, R.I., with whom John M. Roney and Roney & Labinger, Providence, R.I., were on brief, for Colin and Alan K.

Before COFFIN and BREYER, Circuit Judges, and BONSAL,* Senior District Judge.

COFFIN, Circuit Judge.

These cross appeals challenge two rulings of the United States District Court for the district of Rhode Island. The first is that two learning disabled children cannot consistently with the Education of All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 et seq., be required to accept placement in the public school system but may remain at a private school at the expense of the municipality's school committee. The second is that the plaintiffs, the children and their father are not entitled to damages for the past refusal of the school committee to fund the private school placement. We affirm both rulings.

### Background

The background and facts of this case are set out in detail in the district court's opinion, printed at 536 F.Supp. 1375 (D.R.I. 1982). We rehearse them briefly here.

Colin and Alan K. are learning disabled children. Prior to September, 1979, they lived in Montgomery County, Maryland. Pursuant to the EAHCA, Montgomery County had funded their placement at the Kingsbury Lab School, a private day school for severely learning disabled children in Washington, D.C.

In the summer of 1979, the children moved with their father, John K., to Middletown, Rhode Island. Middletown participates with three other communities in a regional program, entitled Newport County Regional Special Education Program (NCRSEP), the purpose of which is to provide special education services for handicapped children. John K. requested that NCRSEP fund special education for the children at the Landmark School, a private, residential school in Pride's Crossing, Massachusetts, that had been recommended to him by the Lab School.

The special education administrator of NCRSEP had medical, psychiatric, social and psychological assessments of the children conducted. The specialists also reviewed the children's Lab School records. Based on those evaluations and records, the administrator prepared an "individualized education program" (IEP) for each child, as required by statute, see 20 U.S.C. § 1414(a)(5). See also 34 C.F.R. § 300.-340–.346. The administrator found the children to be moderately handicapped and recommended placement in self-contained special education classrooms in the regional public school program.

Dissatisfied with the administrator's recommendation, John K. requested and received administrative review, which, in Rhode Island, includes a hearing before an officer designated by the local Superintendent of Schools and a right of appeal to the state Commissioner of Education (Commissioner).[1] The local hearing officer designated by the Middletown School Committee (MSC) concluded that the children were severely learning disabled and rejected the proposed placement in self-contained classrooms in the public school system. Rather than ruling on the appropriateness of plaintiffs' requested placement at Landmark, he ordered MSC to develop new IEPs. On April 24, 1980, a review officer, Christopher

---

* Of the Southern District of New York, sitting by designation.

1. 20 U.S.C. § 1415(b)(2), (c) requires only that the state provide for "an impartial due process hearing," leaving it up to the state whether to provide one level of review—at the state level—or review at both the local and state levels.

O'Neil, designated by the Commissioner, affirmed the local hearing officer's decision.

MSC did not immediately develop new IEPs. On May 29, 1980, plaintiffs brought suit in federal district court against the Commissioner, the MSC and its individual members, members of the Newport County Regional School Committee, and the Superintendent of the NCRSEP.[2] The complaint asserted causes of action under the EAHCA, the Rehabilitation Act (RHA), 29 U.S.C. § 794, the equal protection clause of the fourteenth amendment and 42 U.S.C. § 1983. It challenged defendants' policy of retaining all learning disabled children in the public school system, defendants' failure to provide appropriate placements as mandated by the Commissioner and the Commissioner's failure to consider and accept the appropriateness of the Landmark placement they requested. On June 6, 1980, the court ordered MSC to formulate new IEPs, which would be reviewed through the state administrative process, and to reserve conditionally a place for the children in Landmark for the 1980–81 school year. The court stayed further proceedings in the case.

MSC developed new IEPs which, with some modifications, the local hearing officer approved. Like the first IEPs, the new IEPs recommended placement in the regional public school system. The Commissioner again designated Christopher O'Neil to review the hearing officer's determination. Mr. O'Neil reversed the hearing officer's decision. Emphasizing his determination that the children were severely handicapped, he found the recommended public school placement inadequate. Because he understood that the parties had agreed in the proceeding before the local hearing officer to limit the placement options to the recommended public school placement or Landmark, the review officer ordered MSC to fund placement at Landmark.

MSC appealed to the Rhode Island Family Court for the County of Newport. John K. filed a petition to remove the state suit to federal district court. The district court granted the motion and denied MSC's motion to remand.

On December 14, 1981, the court dismissed plaintiffs' claims for declaratory and injunctive relief under the EAHCA on the ground that plaintiffs were not "parties aggrieved" by an administrative ruling. *See* 20 U.S.C. § 1415(e)(2). The court found damages unavailable under the EAHCA and therefore granted summary judgment to defendants on that aspect of plaintiffs' claim. The court then consolidated plaintiffs' claims for damages and injunctive relief under the RHA and 42 U.S.C. § 1983 and their claims for attorney's fees and costs with MSC's challenge under the EAHCA to the Commissioner's order. On April 21, 1983, the district court issued its final order, containing the two rulings we have earlier described.

## I. *MSC's Appeal*

### A. The District Court's Review of the State Administrative Process

In *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court discussed the proper scope of judicial review in suits brought under 20 U.S.C. § 1415(e)(2): "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child[ren] to receive educational benefits?" 458 U.S. at 206, 102 S.Ct. at 3051 (footnotes omitted). MSC challenges both the failure of the district court to ensure that the state administrative process was procedurally sound and its failure to recognize that the IEPs, as formulated by MSC, were "reasonably calculated to enable the child[ren] to receive educational benefits."

### 1. Procedural Defects in the Administrative Hearing

Defendants complain of the fact that the state review officer who reversed the Au-

2. Only MSC appeals from the district court's order.

gust 11, 1980 decision of the local hearing officer and ordered MSC to fund plaintiffs' placement at Landmark was an employee of the state educational agency. The hearing there did not satisfy the requirement of the EAHCA that it not "be conducted by an employee of [the local or state educational] agency ... involved in the education or care of the child." 20 U.S.C. § 1415(b)(2).[3]

The district court rejected defendants' request that it remand the case for an impartial administrative review. Based on the legislative history of the statute, the court concluded that Congress intended the prohibition against review by employees of an agency involved to benefit only handicapped children and their parents and guardians. *See* Sen.Conf.Rep. No. 455, 94th Cong., 1st Sess. 49, *reprinted in* [1975] U.S. Code Cong. & Ad.News 1425, 1502. MSC therefore was not within the "protected class" that Congress envisioned when it prohibited employees of the state educational agency from acting as review officers and could not challenge the alleged defect in the state review procedure. In this case, the court noted that it would not necessarily remand the under EAHCA for a new administrative review, because of its own mandate to assess the evidence independently, not simply to ensure that the administrative determination was supported by substantial evidence. *See* 20 U.S.C. § 1415(e)(2). Thus, the court concluded, even if the challenged procedural defect would render an educational agency a "party aggrieved" and entitle it to review in the district court, the remedy for that defect is de novo review by the court, not a second chance in the administrative process. *See Kruelle v. New Castle County School District,* 642 F.2d 687, 692 (3d Cir.1981); *Grymes v. State Bd. of Educ.,* 3 EHLR 552:279, :281 (D.Del. Jan. 7, 1981).

Since the district court's decision, the Supreme Court has indicated that the court's review is to be something short of a complete de novo review of the state educational program, *see Rowley, supra,* 458 U.S. at 206, 102 S.Ct. at 3051 ("The fact that § 1414(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings"), a decision that casts some doubt on the district court's conclusion that even if there were procedural error in the administrative process, no remand would be required. MSC also points out that at least one court has allowed a local educational agency to challenge the state educational agency's use of an employee as a review officer. *See East Brunswick Bd. of Educ. v. New Jersey State Bd. of Educ.,* Current EHLR Dec. 554:122 (D.N.J.1982).

██ We need not decide when a remand should be required to cure procedural defects in the administrative review or whether a local educational agency may ever challenge the designation of a state agency employee as review officer. MSC is foreclosed from challenging the procedural violation because through two hearings, numerous briefs, and two decisions by Review Officer O'Neil, MSC did not object to the fact that he was a Department of Education employee. The issue apparently was raised for the first time in a brief presented to the district court. Nor has MSC offered any excuse for its failure to raise the objection during the administrative proceeding, when the error might have been easily corrected. As the Supreme Court has instructed, "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made

---

**3.** The statute specifically requires only that the initial hearing not be conducted by an employee of the reviewing agency. 20 U.S.C. § 1415(b)(2). As the district court noted, however, the legislative history indicates that the prohibition against review by an employee of the agency involved extends to the second level of administrative appeal as well, *see* Sen.Conf. Rep. No. 455, 94th Cong., 1st Sess. 49, *reprint-* ed in [1975] U.S.Code Cong. & Ad.News 1425, 1502. *See also Grymes v. Madden,* 672 F.2d 321, 323 (3d Cir.1982). The court also noted that courts have found state educational agencies to be involved in the education or care of a child even if they have only a supervisory role, *see, e.g., Helms v. McDaniel,* 657 F.2d 800, 806 n. 9 (5th Cir.1981); *Robert M. v. Benton,* 634 F.2d 1139, 1141–42 (8th Cir.1980).

while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

### 2. The Scope of the District Court's Review

MSC argues that in rejecting the IEPs developed for plaintiffs, the district court exceeded the scope of the review the *Rowley* Court indicated is appropriate under the EAHCA. In support of its argument, MSC challenges the findings on which the court based its decision—that under the current IEPs the children might be placed in classes with a pupil/teacher ratio of as high as ten to one, that such a ratio would not permit the individualized instruction the children need, both intellectually and emotionally, that the possibility of mainstreaming the children with non-handicapped children in certain subjects would be detrimental and that the IEPs were grounded on the erroneous premise that the children suffer only moderate learning disabilities.

We find nothing in *Rowley* that persuades us that the review exercised by the district court was anything other than entirely appropriate. In *Rowley,* the district court, affirmed by the court of appeals, had rejected IEPs that had been challenged and approved through two levels of state administrative review. In addition, despite finding that the plaintiff, a deaf child, "performs better than the average child in her class and is advancing easily from grade to grade," the court found that she was not progressing as well as she would without her handicap and therefore that the denial of a sign language interpreter was a denial of the "free appropriate education" guaranteed by the EAHCA. The Supreme Court reversed, cautioning that besides procedural requirements, the EAHCA requires only that the IEP be "reasonably calculated to enable the child to receive educational benefits." The Court also insisted that although reviewing courts are to make independent decisions based on a preponderance of the evidence, they should give due weight to state administrative proceedings.

In this case, in contrast to *Rowley,* the district court affirmed the determination of the state Commissioner. In addition, both the Commissioner and the district court determined that the current IEPs were inadequate to enable the children to learn and to progress. Otherwise phrased, the court determined that the IEPs were not "reasonably calculated to enable the child[ren] to receive educational benefits."

■ Regarding MSC's challenge to the factual bases for the court's decision, we note our responsibility to uphold the court's findings unless they are clearly erroneous. *Abrahamson v. Hershman,* 701 F.2d 223, 230 (1st Cir.1983); *Doe v. Anrig,* 692 F.2d 800, 808 (1st Cir.1982). As set out in its opinion, the district court had before it a great deal of evidence regarding plaintiffs' disabilities and their educational needs. Having reviewed the evidence, we cannot say that the court's findings, either as to the severity of plaintiffs' disabilities or as to the effect of the proposed placement on their ability to learn and progress were clearly erroneous.

### B. The Relief Granted by the District Court

### 1. The District Court's Authority to Order MSC to Continue Funding Plaintiffs' Education at Landmark

■ MSC challenges the fact that the district court not only rejected MSC's challenge to the Commissioner's order, but also granted plaintiffs injunctive relief under the EAHCA, even though plaintiffs were not parties aggrieved by the Commissioner's determination. Given our disposition of MSC's challenge to the impartiality of the Commissioner's designated review officer, it would not appear that MSC would gain anything by being bound only by the order of the Commissioner, as affirmed by the district court, rather than by a more limited order of the court itself. In any case, the short answer to MSC's argument is that under 20 U.S.C. § 1415(e)(2), the district court had jurisdiction over MSC's challenge

to the state administrative determination and authority to "grant such relief as the court determines is appropriate." Although the scope of that authority is limited by the court's responsibility to accord due weight to the state administrative proceedings, *see Rowley,* 458 U.S. at 206, 102 S.Ct. at 3051, we are aware of no authority indicating that the district court may grant relief only in favor of the party aggrieved by the state administrative process.[4]

### 2. Least Restrictive Placement

MSC urges that the court erred in ordering it to continue funding plaintiffs' placement at Landmark because placement there violates the EAHCA's requirement that to the maximum extent appropriate, handicapped children be educated with children who are not handicapped. *See* 20 U.S.C. § 1412(5); 34 C.F.R. § 330.550–.556.[5] Although it does not appear that MSC made any effort to clarify the misunderstanding, MSC also urges that the source of the court's error was the review officer's misunderstanding that the parties had agreed to limit the possible placement alternatives to that proposed in the IEPs and Landmark. Thus, having rejected the IEPs, the review officer had no choice but to order defendants to fund plaintiffs' placement at Landmark, even though a less restrictive, third alternative would have been preferable.

While it may be that the review officer erred in ordering MSC to develop new IEPs which would include placement of plaintiffs at Landmark, rather than simply directing it to develop IEPs that would adequately provide for plaintiffs' educational needs and would accommodate the EAHCA's "least restrictive placement" require-

ment, the district court cannot be charged with a similar error. Having determined that the current IEPs would not provide plaintiffs with a "free appropriate public education" as required by the EAHCA, the court specifically declined to decide whether Landmark or some non-residential placement, but one more responsive to plaintiffs' needs than that currently proposed by MSC, would best accommodate the EAHCA's requirements. Because the court was unable to assess, on the record before it, the effect on the children of an alternative non-residential placement, and because it was satisfied that Landmark, where by the time of the court's decision, the children had been enrolled for two academic years, provided at least an appropriate special education, the court ordered MSC to continue funding plaintiffs' placement at Landmark until such time as defendants propose an alternative placement that is determined to provide a free appropriate public education.[6]

In *Rowley,* the Supreme Court emphasized that "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." 458 U.S. at 207, 102 S.Ct. at 3051. Far from being reversible error, we think the court's decision to allow MSC to determine the placement that would be most appropriate for the children, in light of its findings regarding the severity of their disability and their need for more individualized attention than MSC had offered, but to order continued placement at Landmark in the interim, reflects a sensible accommoda-

---

**4.** MSC's other procedural challenges are without merit. The court did not err in refusing to remand MSC's action to state court. Given our affirmation of the court's refusal to grant plaintiffs' relief under the RHA, *see infra,* we need not address MSC's challenge to the court's refusal to dismiss plaintiffs' RHA claims.

**5.** MSC does not argue that the EAHCA's mainstreaming provisions require that a handicapped child always be educated with nonhandicapped children or that residential place-

ment is never appropriate. *See* 20 U.S.C. § 1401(16); 34 C.F.R. § 300.302.

**6.** By agreement of the parties, plaintiffs had been placed at Landmark for the 1980–81 and 1981–82 academic years. Thus, even if the court had remanded the case to the state review officer for determination of the most appropriate placement for plaintiffs, they would have been entitled to stay at Landmark during the pendency of the proceedings, *see* 20 U.S.C. § 1415(e)(3).

tion of the state's interest in shaping the children's educational programs and the children's interest in receiving sufficient educational attention while those programs are being developed.

## II. *Plaintiffs' Cross Appeal*

In their initial complaint, plaintiffs asserted claims based on the EAHCA, the RHA, and the equal protection clause, as enforceable through 42 U.S.C. § 1983, and requested the court to award them actual and punitive damages for the time, expense, inconvenience and suffering resulting from MSC's failure to provide them a free appropriate public education. They also requested the costs of the action and reasonable attorney's fees.

On December 14, 1981, the court determined that damages were not available under the EAHCA. Plaintiffs have not appealed that decision. In its final order, on April 21, 1982, the court decided that damages were unavailable to plaintiffs under the RHA or under 42 U.S.C. § 1983 for the alleged violation of the equal protection clause. *See* 536 F.Supp. at 1388. Plaintiffs appeal only that portion of the court's decision denying them compensatory and punitive damages under the RHA.[7]

The court acknowledged that an implied private right of action exists to enforce the RHA and that damages are probably available under that act, but declined to award them because it found that MSC's refusal to fund a residential placement could not possibly violate the RHA. Relying on its opinion in *Turillo v. Tyson,* 535 F.Supp. 577

(D.R.I.1982), the court determined that "[f]unding a residential placement would constitute affirmative conduct making available to handicapped children facilities and programs not available to non-handicapped students," 536 F.Supp. at 1388, conduct which the Supreme Court has indicated, in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), is not required by section 504 of the RHA.[8] In light of the existence of regulations, promulgated pursuant to section 504 by the Secretary of HEW, which require educational programs that receive federal financial assistance to provide to handicapped children a free appropriate education, including, if necessary, the provision of residential placement, *see* 45 C.F.R. §§ 84.31 *et seq.,* we think this issue requires close examination.

In *Davis,* the Supreme Court held that section 504 does not require "affirmative efforts to overcome the disabilities caused by handicaps," but only "the evenhanded treatment of qualified handicapped persons." 442 U.S. at 410, 99 S.Ct. at 2369. The Court recognized, however, that "the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons [will not always] be clear" and counseled that "[i]dentification of those instances where a refusal to accommodate the needs of a disabled person amounts to discrimination against the handicapped continues to be an important responsibility of HEW." 442 U.S. at 412–13, 99 S.Ct. at 2370.

---

**7.** The court also noted that plaintiffs had requested attorney's fees, but that neither party had fully briefed the issue of the availability of attorney's fees. 536 F.Supp. 1389 n. 21. The court therefore did not address the attorney's fees issue. As plaintiffs have not raised the attorney's fees issue before us, we address only the court's decision that damages are unavailable to plaintiffs under the RHA.

**8.** Section 504 provides:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any pro-

gram or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees." 29 U.S.C. § 794.

Several courts have upheld the Secretary's regulations as not imposing overly extensive affirmative obligations on the school systems and as consistent with a presumption that school children receive educational services appropriate to their needs, *see e.g., Tatro v. Texas,* 625 F.2d 557 (5th Cir.1980); *Phipps v. New Hanover County Bd. of Educ.,* 551 F.Supp. 732 (E.D. N.C.1982). To our knowledge, however, none of those courts has specifically addressed the provision of residential placement. *But see Dept. of Educ. v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii 1982) (assuming the validity of 45 C.F.R. § 84.33, .34). Whatever the general validity of the theory that the regulations do no more than require the same attention to individualized needs for handicapped as for non-handicapped children, we agree with the district court that the theory breaks down where the individualized attention requires the payment of substantial funds for residential placement for handicapped children. *Cf. University of Texas v. Camenisch,* 451 U.S. 390, 399, 101 S.Ct. 1830, 1836, 68 L.Ed.2d 175 (1981) (Burger, Ch. J., concurring) (on remand of challenge under section 504, of University's refusal to pay for a sign language interpreter, "[t]he trial court must, among other things, decide whether the federal regulations at issue, which go beyond the carefully worded nondiscrimination provision of § 504, exceed the powers of the Secretary under § 504."); *American Public Transit Ass'n v. Lewis,* 655 F.2d 1272, 1277–78 (D.C.Cir.1981) (DOT regulations requiring extensive modifications of public transit systems to accommodate handicapped persons barred by *Davis* ). *See also Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981), ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously").

Without specifically addressing the Secretary's authority, under section 504, to require the funding of a residential placement, plaintiffs seek to avoid the bar of *Davis* by arguing that MSC's policy of providing residential placement for some handicaps but not for learning disabilities discriminates on the basis of plaintiffs' handicap. Although we have serious doubts whether Congress intended § 504 to provide plaintiffs with a claim for discrimination vis-a-vis other handicapped individuals, the argument is not without support. *See e.g., Calhoun v. Illinois State Bd. of Educ.,* 550 F.Supp. 796 (N.D.Ill.1982); *William S. v. Gill,* 536 F.Supp. 505 (N.D.Ill.1982) (recognizing claims for relief under section 504 in allegations of "wrongful exclusion from the benefits of EAHCA"); *see also Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982). It does not, however, persuade us that plaintiffs should be entitled to damages. Even assuming that plaintiffs can avoid the bar of *Davis* by framing their claim as one of discriminatory exclusion from benefits available to other handicapped persons, plaintiffs' claim stalls before a second hurdle.

In *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) and *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court warned against courts' broadening the limited remedy provided by a specific statute by recourse to the provisions of a more general one. As the court noted in *Turillo v. Tyson,* 535 F.Supp. at 585, the question whether the EAHCA should be held to be the exclusive remedy for handicapped children aggrieved by their educational placement raises different issues from those addressed by the Supreme Court in *Middlesex County* and *Novotny,* in that "[u]nlike §§ 1983 and 1985(3), which are purely remedial devices, the Rehabilitation Act contains its own substantive rights." In this context, however, the substantive rights imposed by the RHA derive wholly from the substantive requirement of the EAHCA. *See Smith v. Cumberland School Committee,* 703 F.2d 4 at 9 and n. 5 (1st Cir.1983). Although plaintiffs frame their challenge as one to MSC's discriminatory policy of not offering residential placement to learning disabled children, the fo-

cus of their complaint is that the policy reflects an error of educational judgment and does not satisfy the EAHCA requirement that plaintiffs be given residential placement necessary to provide them with a free appropriate public education. They do not suggest, nor is there any evidence suggesting, that MSC or its individual members have any particular animus towards learning disabled children. *Cf. Monahan v. Nebraska, supra,* 687 F.2d at 1170–71 (refusing to impose liability under section 504 for "a mere failure to provide the 'free appropriate education' required by EAHCA", but suggesting that "discrimination" under section 504 might be found in "something more" such as "bad faith or gross misjudgment").

In *Smith,* we applied the reasoning of the Supreme Court in *Middlesex County* to bar recovery of attorneys' fees under the RHA when they are unavailable under the comprehensive remedial scheme of the EAHCA. *See Smith, supra,* at 9–10. For similar reasons, we think the absence of a remedy of damages under the EAHCA for the injury complained of by plaintiffs in this case, *see Doe v. Anrig,* 692 F.2d 800, 811–12 (1st Cir.1982) (absent exigent circumstances, 20 U.S.C. § 1415(e)(2) provides only injunctive relief), is a sufficiently clear indication of congressional intent to limit plaintiffs to prospective relief that plaintiffs may not avoid that limitation by recourse to the more general provisions of the RHA. *See Novotny, supra,* 442 U.S. at 374–77, 99 S.Ct. at 2350–51 (rights created by Title VII may not be asserted within the remedial framework of 42 U.S.C. § 1985(3), because to do so would allow a plaintiff to avoid the detailed and specific provisions of Title VII, including the unavailability of general or punitive damages). *See also Reineman v. Valley View Community School District,* 527 F.Supp. 661 (N.D.Ill.1981).

*Appellants' motion for leave to file a brief in response to plaintiffs' cross appeal is granted. The judgments of the district court are affirmed.*