George HURRY, et al., Plaintiffs, Appellees,

v.

Dr. Jerome B. JONES, etc., et al., Defendants, Appellants.

George HURRY, et al., Plaintiffs, Appellants,

v.

Dr. Jerome B. JONES, etc., et al., Defendants, Appellees.

Nos. 83–1604, 83–1718.

United States Court of Appeals, First Circuit.

Argued Feb. 8, 1984.

Decided May 18, 1984.

Sheldon Whitehouse, Charleston, W.Va., with whom Vincent J. Piccirilli, Providence, R.I., was on brief, for Dr. Jerome B. Jones, etc., et al.

Thomas A. Tarro, III, Providence, R.I., for George Hurry, et al.

Before COFFIN and ALDRICH, Circuit Judges, and GIGNOUX,* Senior District Judge.

COFFIN, Circuit Judge.

Defendants/appellants, who are school and transportation officials in Providence, appeal from a decision of the United States District Court for the District of Rhode Island awarding damages to George Hurry, a physically and mentally handicapped minor, and to his parents. The district court found that appellants' failure to provide George with door-to-door transportation to and from school violated both the Education for All Handicapped Children Act of 1975 (EAHCA) and the Rehabilitation Act of 1973. The court awarded $14,546.00 under the EAHCA and $5,000.00 under section 504 of the Rehabilitation Act; appellants challenge both awards. The court also indicated that it would award attorney's fees and costs, but it subsequently rejected plaintiffs' fee application. The Hurrys cross-appeal from the denial of attorney's fees. We find that the entire damage award under the Rehabilitation Act and all but $5,750.00 of the award under the EAHCA were improper, and we vacate those portions of the district court's judgment. We affirm the district court's decision to deny plaintiffs' fee application.

George Hurry (George) suffers from cerebral palsy and a degree of mental retardation, and is confined to a wheelchair by spastic quadriplegia. He has attended various special education programs in the Providence area. Until January 1976 the City of Providence provided him with door-to-door bus transportation to and from school. By January of 1976, however, George had reached a weight of 160 pounds, and the bus drivers deemed it unsafe to continue to carry him up and down the steep concrete steps that led from his front door to the street. Mr. and Mrs. Hurry began to transport George to and from school in their van.

Starting in June 1976 Mr. Hurry held a position that required him to work until 5:15 p.m. each day. Because Mrs. Hurry could not lift George from the van and carry him up the steps without her husband's aid, he had to wait in the van for several hours each day until Mr. Hurry left work. He frequently missed school when the weather was too hot or too cold to permit him to wait in the van. George began to complain of pain in his legs from the long periods he spent in the van. In December of 1977, Mr. and Mrs. Hurry stopped transporting him to school; George did not attend school again until the fall of 1979.

■ The Hurrys discussed their transportation problem with the Providence School Department, but the parties were unable to reach a satisfactory solution. Plans to construct a permanent wheelchair ramp at the Hurrys' home failed when the Mayor's office refused to provide public funding for the project unless multiple liens on the property were discharged. The Hurrys refused the School Department's offer of home instruction for George because they believed that this instruction would not provide their son with the "least restrictive environment" available. In September of 1978 the Rhode Island Protection and Advocacy System (RIPAS) requested that the Providence School Department conduct a hearing on the Hurrys' problem. When the School Department did not respond to the request within the statutory time limit, RIPAS contacted the State Commissioner of Education on November 7, 1978, to request a hearing. This second request likewise failed to produce the statutorily required hearing, and RIPAS filed this action in the Hurrys' behalf on December 19, 1978. By October 29, 1979, the parties had agreed on an Individual Educational Program for George that provided him with transportation to and from school and obviated the need for injunctive relief.[1] RIPAS with-

---

* Of the District of Maine, sitting by designation.

1. The initial solution was for the school bus to pick George up at his home before his father left for work so that Mr. Hurry could carry him

drew from the action at this point, but the Hurrys pursued claims for damages for the period during which George attended school only if they were able to transport him and for the period during which he did not attend school at all.

The Hurrys based their claims for damages on the EAHCA, the Rehabilitation Act, the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments of the United States Constitution, Article 12 of the Constitution of Rhode Island, and R.I.Gen.Laws § 16–24–4. The court found, and the parties do not dispute, that further pursuit of administrative remedies would have been futile, and that the action was properly before the court. The court found that the Hurrys could not recover damages under the Developmentally Disabled Assistance and Bill of Rights Act, and that they had failed to make out their claims under the federal and state constitutions, § 1983, and the state statutory provision. The Hurrys do not contest these conclusions. The court did award damages under the EAHCA and the Rehabilitation Act, and defendants challenge these awards on appeal.

### I. Damages Under the Education for All Handicapped Children Act

The EAHCA provides that a state receiving federal assistance for education of the handicapped must assure "all handicapped children the right to a free appropriate public education". 20 U.S.C. § 1412(1). The Act further provides that parties aggrieved by decisions affecting a handicapped child's education may bring a civil action in state or federal court, and that the court hearing such an action may grant "such relief as the court determines is appropriate". 20 U.S.C. § 1415(e)(2).

A number of courts have interpreted the relief provision of the EAHCA as being limited to injunctive remedies, and have held that damages are not recoverable under the Act absent exceptional circumstances. *See, e.g., Miener v. Missouri,* 673 F.2d 969 (8th Cir.1982); *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). After a lengthy analysis of the Act's legislative history, the Seventh Circuit concluded in *Anderson:*

> "Congress ... would have intended that parents take action to provide the necessary services for their children without awaiting the outcome of lengthy administrative and judicial proceedings. Parents should then be compensated for the costs of obtaining those services that the school district was required to provide." 658 F.2d at 1213 (footnote omitted).

The court recognized two "exceptional circumstances" in which these limited reimbursement awards might be made. The first such circumstance exists when "the services in dispute were necessary to protect the physical health of the child"; the second arises when "the defendant has acted in bad faith by failing to comply with the procedural provisions of [§ 1415] in an egregious fashion". *Id.* at 1214.

The district court found that the circumstances of the Hurrys' case met the requirements of both *Anderson* exceptions. George received physical therapy as well as occupational training at school. A pediatrician specializing in the treatment of physically and mentally handicapped children testified that "George needed physical therapy on a daily basis, and without it George's bodily and motor functions would be adversely affected". Mr. Hurry testified that the ligaments and tendons in George's legs tightened during the period he was absent from school, and that the pain interfered with his sleep. The district

down the steps, and to transport George to another school in the afternoon where he could wait in comfort until his father left work and took him home. Ultimately, Mrs. Hurry's mother purchased an adjoining property with a sloping driveway, and the Hurrys were able to wheel George out the back door of their house and down the driveway to meet the school bus.

Appellants argue that the Hurrys had a duty to "mitigate damages" by helping to engineer an appropriate solution to the problem at an earlier date. We note that this theory is doubtful at best; but since it was never raised before the district court, we decline to address it on appeal. *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979).

court noted that "related services" such as transportation are included within the EAHCA's definition of a "free appropriate public education", 20 U.S.C. § 1401(17) & (18), and that the School Department's failure to provide these services endangered George's physical health. In addition, the court found that "Defendants took approximately three years to meet their indisputable lawful obligation to provide transportation for George Hurry to and from school", and that "Defendants' repeated and gross lack of concern must be perceived as a bad faith failure to provide clearly mandated services". *Hurry v. Jones,* 560 F.Supp. 500, 507 (D.R.I.1983).

■ At the time the district court reached its decision, this circuit subscribed to the *Anderson* view that reimbursement is available to parties aggrieved by violations of the EAHCA only in exceptional circumstances. *Doe v. Anrig,* 692 F.2d 800 (1st Cir.1982) (*"Doe v. Anrig I"*). We have since adopted a more expansive view of reimbursement under the EAHCA, allowing reimbursement of interim educational and related expenses even when the "exceptional circumstances" identified in *Anderson* are not present. *Doe v. Anrig,* 728 F.2d 30 (1st Cir.1984) (*"Doe v. Anrig II"*); *Doe v. Brookline School Committee,* 722 F.2d 910 (1st Cir.1983). Under this approach, it is clear that the district court correctly found that the Hurrys are entitled to reimbursement under the EAHCA for the interim transportation services they provided until the parties agreed on an appropriate Individual Educational Program for George.

The regulations promulgated by the Rhode Island Board of Regents for Education to implement the EAHCA provide that handicapped children are to be given "door-to-door" transportation from the "street level entrance of dwelling". Our dissenting brother argues that the "street level" language in this regulation absolves the School Department of liability for its refusal to negotiate the Hurrys' steps. We do not believe that the issue of liability is properly before this court, so we do not find it necessary to interpret the Rhode Island regulations.

■ The district court found that the defendants ignored their "obvious duty" to provide George with transportation to and from school. On appeal, defendants do not argue that the court erred in finding that they had a duty to provide George with "door-to-door" transportation (indeed, they note that they "[do] not object to ... a measure of damages" based on the Hurrys' out-of-pocket expenses incurred in transporting George to school and that they had reimbursed the Hurrys for these expenses before the district court entered judgment). Instead, they argue that their duty to provide George with door-to-door transportation was not so "obvious" that the district court should have made it the basis of a finding that they acted in bad faith. Because, as we have noted, we do not consider a finding of bad faith a prerequisite to a damage award under the EAHCA, we have no need to determine whether or not defendants' duty was "obvious"; and because defendants have not raised or briefed the theory that they had no duty at all to negotiate the Hurrys' steps, we do not reach that issue.

Our dissenting brother chastizes us for unfairness because, he argues, a legal premise—the bad faith requirement of *Anderson*—had changed after the case had been tried. But defendants always could have asserted the absence of liability based on the lack of any breach at all of the regulations. That they never asserted this defense, and relied wholly on the argument that they had not acted in bad faith in violating the regulations, does not, it seems to us, require us to say, "You guessed wrong in putting all your eggs in one basket. Now we shall let you put them in the other basket that you always had on the shelf."

The district court made three separate damage awards to the Hurrys under the EAHCA. First, it reimbursed Mr. and Mrs. Hurry $1,150.00 for the out-of-pocket expense of driving George to school. It calculated this expense by multiplying the 92

school weeks in 1976 and 1977 during which the School Department failed to supply transportation by Mr. Hurry's $12.50 estimate of the weekly cost he incurred in transporting George himself. The parties do not contest this portion of the award, so we have no need to address it on appeal. Second, the court awarded the Hurrys $4,600.00 for their contributed services in driving George to and from school. It arrived at this figure by compensating the Hurrys at a rate of $10.00 per day for the 92 five-day school weeks during which the Hurrys transported George themselves. Third, the court awarded George $8,796.00 for the period from January 1978 until June 1979 during which he did not attend school at all. This award represented "the amount Defendants were not required to expend" on George's education, an amount the court calculated by multiplying the average per pupil cost for special education during the relevant period by the number of months George was absent. Appellants do not challenge the district court's method of computing damages; instead, they contend that the award to the Hurrys for contributed services and the award to George were improper.

■ The award of $4,600.00 for Mr. and Mrs. Hurry's contributed services in driving George to school requires us to determine whether the reimbursement available under the EAHCA is limited to out-of-pocket expenses, or whether it may also include compensation for the expenditure of time and effort. We see no reason why the latter type of expense should not be reimbursed, except for the possibility that, when reimbursement is given for the monetary equivalent of time and effort, excessive payments might be made. To the extent that this could occur, the distinction between "reimbursement" and "damages" would be blurred. Here, however, we are considering the district court's award of $10.00 per day for two daily round trips of ten to fifteen miles, taking several hours of

the Hurrys' time. This is obviously a bare-bones figure, well within any reasonable estimate of fair reimbursement. Moreover, it cannot be argued that the service in question—transporting George to and from school—called for any special skill or training that the Hurrys lacked.

It is clear that if the Hurrys had hired a private agency to drive George to and from school, this expense would have been reimbursable under the EAHCA, just as the expense of placing George in a private school would have been reimbursable had the School Department wrongfully declined to provide him with an appropriate public education. *Doe v. Brookline School Committee*, 722 F.2d at 919–21. The fact that the Hurrys performed the service themselves rather than hiring someone else to perform it should not bar them from recovering the reasonable value of their time and effort.

The $4,600.00 award to the Hurrys also requires us to consider whether they waived their right to reimbursement by engaging in "self-help" rather than seeking court approval for the action that gave rise to their claim for reimbursement. This question usually arises when the parents disagree with a state's Individual Educational Program (IEP) placing the child in public school, and they unilaterally move the child to private school pending review of the IEP. *See Doe v. Brookline School Committee*, 722 F.2d at 920. Although this court did not decide the "self-help" issue in *Brookline*, it did observe that in similar cases, "where ... circumstances were sufficiently compelling, the court ordered reimbursement". *Id.* In this case, the Hurrys did not exercise their independent judgment of what school was best for their child; instead, they undertook to transport the child to the school where the School Department had placed him.[2] Under these circumstances, we do not believe that the Hurrys' self-help should bar their

---

2. Although the School Department did propose an IEP that would have provided George with education at his home, it did not make this proposal until November 10, 1978, after the

Hurrys had stopped transporting George. During the period when the Hurrys were transporting George, he was placed at Pleasant View School in Providence.

recovery. We affirm the award of $4,600.00.

■ We next consider the award of $8,796.00 to George to compensate him for the period during which he was not able to attend school. The district court explained this award by noting:

"Defendants should not be rewarded for their failure to provide George with an educational opportunity. The savings which accrued to Defendants are ill-gotten gains which should be denied them.... [George] did not attend school from January, 1978 to June, 1979. Due to Defendants' persistent indifference, the cost of educating George during this time was avoided. This result is clearly inequitable. Equity requires that George be recompensed the amount Defendants were not required to expend." 560 F.Supp. at 508.

The purpose of the district court's award was to prevent the School Department from being "unjustly enriched" by having denied George the education to which he was entitled under the EAHCA. We are not aware that any circuit court has sustained an award for unjust enrichment (as distinguished from reimbursement) under the EAHCA, and we decline to approve such an award here.

We believe that the reimbursement remedy gives both school officials and parents the proper incentives to provide the handicapped child with an appropriate education by ensuring that the party who prevails in an IEP dispute will be repaid the expense of interim provisions for the child's welfare. See Doe v. Brookline School Committee, 722 F.2d at 920–21. To expand the EAHCA damage remedy to include equitable damages would be improper for several reasons. In the first place, we doubt that the Providence School Department avoided $8,796.00 in educational expense through George's absence. We think it likely that much of the per child cost for special education, on which the court based its award, represents fixed expenses like those of maintaining physical facilities and employing teachers—expenses which would not be significantly reduced by the absence of one child. Even if it were possible to calculate the amount that the School Department actually saved through George's absence, this amount would not represent a personal saving to the school officials, but rather would represent an increase in the funds available to educate other handicapped children. In a sense, then, the parties "unjustly enriched" are the children receiving special education in Providence, not the Providence school officials. In addition, to make a substantial "unjust enrichment" award to the child provides the parents with an improper incentive to keep the child at home rather than to make an interim provision for his education. For these reasons, we think that the result of an "unjust enrichment" award under the EAHCA is to "hinder rather than help the very children for whose benefit the statute was enacted". Anderson, 658 F.2d at 1213 (footnote omitted).

## II. Damages Under the Rehabilitation Act

■ The court also awarded George $5,000.00 under § 504 of the Rehabilitation Act of 1973 as compensation for the physical and emotional hardships he endured during the transportation dispute. This section of the Rehabilitation Act provides:

"No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.

The court concluded that the School Department's failure to provide George with transportation constituted discrimination on the basis of his handicap. It held that "finding an appropriate way in which to get George Hurry from his home onto a school bus would not have placed an undue financial or administrative burden on the Defendants, and the Plaintiffs are therefore entitled to relief". 560 F.Supp. at 511.

Most circuits have concluded that a private right of action exists to enforce § 504

of the Rehabilitation Act, and the Supreme Court has recently assumed without deciding that such an action can be brought to redress an employment discrimination claim under § 504. *See Consolidated Rail Corp. v. LeStrange,* —— U.S. ——, 104 S.Ct. 1248, 1252 n. 7, 79 L.Ed.2d 568 (1984). The question to what extent damages are recoverable under § 504 is still unanswered. *See id.* at 1252 (holding that "it [is] clear that § 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay"); *Ciampa v. Massachusetts Rehabilitation Commission,* 718 F.2d 1, 5 (1st Cir.1983) (assuming without deciding that damages are available under § 504). We have no need to reach this question at present, because we find that the circumstances of this case do not support the award of damages under the Rehabilitation Act.

This court's recent decision in *Colin K. by John K. v. Schmidt,* 715 F.2d 1 (1st Cir.1983), affirmed a denial of damages under the Rehabilitation Act in similar circumstances. In *Colin K.,* the father of learning disabled children challenged a state IEP placing the children in public school, and eventually secured the children's placement in a private facility. The district court affirmed the decision placing the children in private school, but it denied the father's claim for compensatory and punitive damages under the EAHCA and the Rehabilitation Act. This court affirmed the district court's disposition of the damage claim. We first observed that compensatory and punitive damages were not available under the EAHCA, and we then held that in an action based on the substantive provisions of the EAHCA, plaintiffs could not use the arguably broader remedy of the Rehabilitation Act to expand the EAHCA's limited damage remedy:

"In this context, ... the substantive rights imposed by the [Rehabilitation Act] derive wholly from the substantive requirements of the EAHCA. Although plaintiffs frame their challenge as one to [defendants'] discriminatory policy of not offering residential placement to learning disabled children, the focus of their complaint is that the policy reflects an error of educational judgment and does not satisfy the EAHCA requirement that plaintiffs be given residential placement necessary to provide them with a free appropriate public education. They do not suggest, nor is there any evidence suggesting, that [defendants] have any particular animus toward learning disabled children." 715 F.2d at 9–10 (citation omitted).

In this case, as in *Colin K.,* the EAHCA is the source of the duty whose breach forms the basis for plaintiffs' damage claim. It is the EAHCA and the state and federal regulations promulgated under that act, not the Rehabilitation Act, that requires the School Department to provide George with door-to-door transportation.[3] The Hurrys do not contend that the School Department discriminates against handicapped people generally or against any particular class of handicapped people; instead, they argue that the School Department has "discriminated" against George by failing to provide him with the transportation services mandated by the EAHCA. We hold that this action was properly brought under the EAHCA, and that "plaintiffs may not avoid [the EAHCA's damage] limitation by recourse to the more general provisions of the [Rehabilitation Act]". *Colin K.,* 715 F.2d at 10; *see also Monahan v. Nebraska,* 687 F.2d 1164, 1170

---

3. Although regulations promulgated under § 504 of the Rehabilitation Act provide that no qualified handicapped person may be excluded from a federally funded program "because *[the] recipient's* facilities are inaccessible or unusable by handicapped persons", 45 C.F.R. § 84.21 (emphasis added), it imposes no duty to improve the private property of the handicapped individual. The section of the regulations applicable to education (Subpart D) provides for transportation only in the event that the recipient of funds refers the handicapped child to a private program, and only to an extent that prevents the parents from incurring greater hardship in transporting the child to the private program than they would incur in transporting him to the recipient's program. 45 C.F.R. § 84.-33(c)(2).

(8th Cir.1982) (refusing to impose liability under § 504 for "a mere failure to provide the 'free appropriate education' required by EAHCA").

## III. Attorney's Fees

The district court originally held that plaintiffs could recover fees in this action under the Rehabilitation Act, 29 U.S.C. § 794a. Before the court had approved plaintiffs' fee application, this court decided in *Smith v. Cumberland School Committee*, 703 F.2d 4 (1st Cir.1983), that attorney's fees were not available under the Rehabilitation Act in an action brought to enforce the provisions of the EAHCA. Because plaintiffs could not separate the hours expended on the Rehabilitation Act claim from the hours spent on the EAHCA, the court denied their fee application.

In light of our finding that the Hurrys presented no substantial claim under the Rehabilitation Act, we hold that a fee award under the act would have been inappropriate even if the plaintiffs had been able to identify the hours they spent on the Rehabilitation Act claim. *Smith v. Cumberland School Committee*, 703 F.2d at 9. We find that the district court properly denied their fee application.

*The decision of the district court awarding the Hurrys $5,750.00 as reimbursement for transportation expenses and the decision denying their application for attorney's fees are affirmed. The decision awarding George Hurry $8,796.00 under the EAHCA and $5,000.00 under the Rehabilitation Act is reversed. The parties will bear their own costs on appeal.*

BAILEY ALDRICH, Senior Circuit Judge (dissenting in part).

I concur in those portions of the opinion that deny recovery, but cannot in the part ordering reimbursement for transportation. I am sorry to dissent over what, in dollars

and cents, is not a large matter, but I feel I must because, with great respect, I believe the court, in declining to face a dispositive issue, is being basically unfair.[1] Both to demonstrate the unfairness, and the consequence to defendants, I first consider the merits, viz., that in spite of a regulation calling for transportation of handicapped children from and to their street-level front door, defendants have been charged with additional burdens due to the fact that plaintiffs' front door was twelve damaged steps above the street.

The district court found,

"Bus drivers for the school department would carry George from the front door of his home down approximately twelve steps *to the street level* and into the bus. By January of 1976, however, George had gained weight and was so heavy (160 lbs.) that the bus drivers would no longer carry him. In addition to the child being overweight, the concrete steps were steep and cracked in some places, making it somewhat unsafe for anyone to attempt to carry George down to the street," (Emphasis suppl.) (560 F.Supp., ante, at 503)

According to defendants' witness's uncontradicted testimony,

"The stairs were extremely steep. The stairs were broken and uneven in places.... [The] *regulations said street level....* [The supervisor] came back to me and said nobody will accept the liability of carrying George Hurry, with all his problems, who also has an obesity problem, for fear they might fall and there might be some legal ramifications." (Emphasis suppl.)

The underlying statute, Education for All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1413(a)(4)(B) and 1401(17), required furnishing, simply, "transportation." The Rhode Island regulations, which the court quoted, and considered,

[1] Defendants' voluntary payment of the Hurrys' out-of-pocket transportation expenses is not a concession of liability, nor does it moot the issue I address. This payment, which represented, in fact, although not pro tanto, a saving in

not having to provide bus service, was part of many efforts on their part to ameliorate the situation, but when push came to shove it was not a recognition of further liability. Indeed, legal liability is what this case is about.

spelt this out, one with respect to transportation generally, ("door to door") and one specifically with regard to assistance, manifestly defining what was meant by "door".

1.0. *Responsibility*—All handicapped children who need special transportation as a related service and as determined by the evaluation process and described in the I.E.P. shall be provided such service. It shall include free transportation to and from the home (*door to door, if necessary*) to the educational program in which he/she is enrolled....

.    .    .    .    .

2.0 Transportation Needs of Handicapped Children.

.    .    .    .    .

2.1.2 A minimum of one aide assigned to each bus. Such aide, in addition to providing general care and supervision of all handicapped children on such bus, shall also provide assistance (*from street level entrance of dwelling*) to such children lacking the mobility to leave the home and board transportation vehicles, and shall further assist such children in debarking the vehicle and entering the school...." (Emphasis suppl.) (Id. at 506–07)

The district court found these regulations "clear," and that, in failing to arrange for George's reaching the street level, defendants "ignored their obvious duty." I find them clear, but just the reverse. In my opinion "street level" means exactly what it says, and the court, although recognizing, ante, that the door was above the street level, excised from the regulation, without even discussion, precisely what had caused all the difficulties.

My brethren feel that because defendants did not attack it, the district court's interpretation is the law of the case. Before reaching that question, I must first consider whether the ruling was wrong. I believe it plainly so. If anything seems clear, it is that there is a difference in kind between a street level entrance from which, if need be, a physically handicapped child may be taken in a wheelchair, or otherwise safely guided by the bus attend-

ant, and a door twelve dangerous steps up, requiring a special attendant, or possibly two, and the risk of a substantial claim for negligence if anything goes wrong. As defendants pointed out in their brief, what would be their liability if a 160 pound, already handicapped, child were to be dropped down twelve concrete steps? Nor can I believe, where the state's regulations do not require it, that the EAHCA requires the school department to remedy defects in the parents' housing, or provide extra assistance and run dangerous risks because of them. The rule in *Doe v. Anrig*, 692 F.2d 800, 811–12 (1st Cir.1982) under which this case was tried, that the statute allowed a school department's limited funds to be depleted only in exceptional situations, was too limited, but plaintiffs' contention that they are entitled to the benefits of the statute without having to repair their own premises, or "move to a new home," seems to me altogether too far in the opposite direction.

The court declines to decide this question.

"We do not believe that the issue of liability is properly before this court, so we do not find it necessary to interpret the Rhode Island regulations.... [B]ecause defendants have not raised or briefed the theory that they had no duty at all to negotiate the Hurrys' steps, we do not reach that issue."

This calls for a little history. As stated, at the time this case was tried the law of this circuit, much discussed in the district court's opinion, was that a school department would not be liable in money damages for a breach of requirements, with two possible exceptions. One was bad faith, *Doe v. Anrig,* ante, and the district court found such. Whether this finding was justified, it certainly was not compelled. The record is replete with exhibits showing defendants' efforts to remedy the situation, and, on appeal, they vigorously disputed the finding. Under the then law good faith would have been dispositive. On this issue defendants raised the meaning of the regulations. They did at the trial. See, inter

alia, quotation, ante. They did here in their brief.

"The 'Regulations of the Rhode Island Board of Regents for the Education of Handicapped Children', adopted April 20, 1977, state in one place that service is to be 'door to door, if necessary', Section VII, Subsection 1.0, but another subsection requires that assistance be provided handicapped children 'from the street level entrance of dwelling', Section VII, Subsection 2.2. (Record Appendix, p. 2). *Clearly, if the words 'street level' in this latter subsection are to have any meaning at all, it is as words of limitation on 'entrance of dwelling'.*"[2] (Emphasis suppl.)

The court now condemns defendants out of hand. The issue of "liability," it says, is not before it. True, defendants argued the meaning of the regulations, but they did so only on the issue of good faith. And what has happened to good faith? That is no longer an issue.

Why is all this? Because, unknownst to the parties, *Doe v. Anrig* was overruled in an opinion circulated by West one week after oral argument. *Doe v. Brookline School Committee*, 722 F.2d 910, 919–21 (1st Cir.1983). I, of course, agree that *Doe v. Brookline* applies. Under *Doe v. Brookline* defendants became liable if they violated the regulations even in total good faith. Thus, because of a post-appeal change in the law, defendants are deprived of a complete defense upon which they understandably relied, and the court now deprives them of a defense they did not know they had to make, because, although their meaning of the regulation was relevant thereto, and argued, they did not stress it in the proper framework.

My brethren say that I chastize them. I speak only in sorrow. Not a sitting goes by but, in the interests of justice, we make points in our opinions, sometimes decisive ones, that counsel have not thought of.

Here counsel is caught by surely an unexpectable change in the law, the overruling of a case only two years old. He loses his defense. He is the one who is chastized— if chastized is given its primary meaning, punished—because he was insufficiently perspicacious. He did raise the meaning of the regulation, resting on an easier (and in my opinion, adequate) approach, and for that he is forever barred—though there is no prejudice to plaintiffs—from taking another. Having argued that defendants acted in good faith because their interpretation of the regulation was reasonable, it is too late to argue that it was not only reasonable, but correct. For me this is an altogether too gamy form of judicial process. I must dissent.

---

**2.** A second possible "exceptional circumstance" allowing reimbursement under *Anrig* was when the alternative services secured by the parents were necessary "to protect the physical health of the child...." *Doe v. Anrig*, ante, 692 F.2d at

811. The district court also found this exception applicable. 560 F.Supp. at 505–07. On appeal, defendants also challenged the application of this exception on its merits, a matter now moot.