STATE of North Dakota, Plaintiff
and Appellee,

v.

Gary BREWER, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Nancy BREWER, Defendant
and Appellant.

Cr. Nos. 890028, 890029.

Supreme Court of North Dakota.

Aug. 21, 1989.

Robin Huseby, Asst. State's Atty., Valley City, for plaintiff and appellee.

Christopher J. Klicka of Home School Legal Defense Ass'n, Paeonian Springs, Va., and Richardson, Isakson & Lange, Hazen, for defendants and appellants. Appearance by Gregory C. Larson.

VANDE WALLE, Justice.

Gary and Nancy Brewer appealed from county court convictions for violating the compulsory-school-attendance law, Chapter 15–34.1, N.D.C.C. We affirm.

Pursuant to Section 15–34.1–03(4), N.D.C.C., the Brewers applied for a "physical or mental condition" exemption from the compulsory-school-attendance law for their daughter, Heather. A four-person multidisciplinary team reviewed the Brewers' request but did not reach a consensus on whether Heather was entitled to that exemption. After reviewing a transcript of the meeting of the multidisciplinary team, the Valley City School Board denied the Brewers' request. The Brewers appealed to Pat Beil, the Barnes County Superintendent of Schools, who affirmed the School Board's decision. The Brewers appealed to the State Superintendent of Public Instruction, Wayne Sanstead, who affirmed Beil's decision. Pursuant to Section 15–34.1–03(3), N.D.C.C., the Brewers then applied for an "economic hardship" exemption from the compulsory-school-attendance law for Heather. The Valley City School Board denied that request.

The Brewers were then charged with violating the compulsory-school-attendance law during the 1987–1988 school year. The Brewers stipulated that they were Heather's parents; that they resided in Valley City, North Dakota; and that Heather did not attend a public or state-approved school in the 1987–1988 school year. The Brewers admitted that Nancy was teaching Heather at home and that Nancy was not a State-certified teacher. The county court concluded that the teacher-certification requirement was constitutional and found the Brewers guilty.

The Brewers argue that their due-process rights were violated by Section 15–34.1–03(3) and (4), N.D.C.C., because

"The Valley City Public Schools are the institutional opponents of home schoolers. They are the body under N.D.C.C. § 15–34.1–04 which is charged with the duty to investigate truancy matters and to refer them for prosecution.

"Local public school boards, their employees, agents, the State education officials, and the Superintendent of Public Instruction, are all advocates of public education. The very nature of their position demands a high degree of loyalty to both the form and philosophy of public schooling. Religious home schoolers, like the Brewers reject such education both as to its form as well as its philosophy. Home schoolers desire a more informal atmosphere with individualized instruction and a specifically religious content to the parent-directed education. Public schools are inherently different. They are secular, group oriented, and those deeming themselves educational professionals are in control of the schools.

\*    \*    \*    \*    \*    \*

"Regardless of the monetary gain or loss that each home schooler represents to a public school, there is a total lack of impartiality with regard to the decisions of disputes between public schools and those who wish to reject their services."

In *First American Bank and Trust Company v. Ellwein*, 221 N.W.2d 509 (N.D.1974), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974), *reh'g denied*, 419 U.S. 1117, 95 S.Ct. 798, 42 L.Ed.2d 816 (1975), this court held that a party was not denied due process or a fair administrative hearing because an administrative agency performed the functions of investigation, prosecution, and adjudication. See also, *Meadow Fresh Farms, Inc. v. Sandstrom*, 333 N.W.2d 780 (N.D.1983). In *Ellwein, supra*, 221 N.W.2d at 514, 517, we said:

"What constitutes due process within an administrative proceeding? While recognizing that the adjudicative function of the Board is quasi-judicial in nature, we have never held that the minimal due process that must be afforded participants before an administrative board or agency is synonymous with minimal requirements of due process in a court of law. To do so would be to create a second judicial branch without statutory authority and add to time required in the disposition of administrative decisions.

\*    \*    \*    \*    \*    \*

"We earlier stated that the minimal due process that must be afforded participants before an administrative board is not synonymous with the minimal requirement of due process in a court of law. The fundamental requirement of due process is the opportunity to be heard.... Our trust must be in the integrity of legally constituted boards to act upon the evidence alone. Judicial review of those actions is the ultimate due process protection accorded those aggrieved." [Citation omitted.]

In *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the United States Supreme Court also held that the combination of investigatory and adjudicatory functions in an administrative agency was not, without more, a denial of procedural due process. The court said that various situations exist where the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable; i.e., when the adjudicator has a pecuniary interest in the outcome or has been the target of personal abuse or criticism from the party before him. However, the Court concluded that a combination of the adjudicatory and investigatory function was not a situation where the probability of actual bias on the part of the decisionmaker was too high to be constitutionally tolerable and observed that a bald challenge to the combination of functions " 'assumes too much and would bring down too many procedures designed, and working well, for a governmental structure of great and growing complexity.' " *Withrow v. Larkin, supra*, 421 U.S. at 49–50, 95 S.Ct. at 1465–1466, 43 L.Ed.2d at 725, *citing Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971).

The rationale of *Withrow* and *Ellwein* controls the Brewers' due-process challenge, and we are not persuaded that *State v. Anderson*, 427 N.W.2d 316 (N.D.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988), requires a different

result. In that case the Andersons contended that Section 15–34.1–03(1), N.D. C.C., violated the Due Process Clause, alleging that a financially interested decisionmaker, the local school district, determined whether or not to excuse a student from public school attendance. Relying on *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the Andersons argued that the local school board's financial interest in not excusing students from the compulsory-school-attendance law violated the Due Process Clause.

We recognized that due process entitles a litigant to an impartial tribunal, but we construed Section 15–34.1–03(1), N.D.C.C., to avoid any doubt of constitutional infirmity and held that the local school board's function under that provision was ministerial rather than discretionary. We therefore distinguished the local school board's function from the adjudicatory function of a judge, which was involved in both *Tumey* and *Ward*. Although *Anderson* generally recognized the due-process requirement of an impartial hearing, our decision in that case is narrower than the position urged by the Brewers. It does not require a conclusion that public school officials are constitutionally disqualified from discretionary decisionmaking under Section 15–34.1–03(3) and (4), N.D.C.C. We did not reach that issue in that decision.

We decline to hold as a matter of law that the probability of actual bias on the part of public school officials approaches a constitutionally impermissible level and there is no factual evidence in this record which reflects an actual bias on the part of these particular public school officials.

The Brewers' reliance on cases interpreting the Education of Handicapped Act, 20 U.S.C. §§ 1400–1415, (1982), is also misplaced. Those cases involve the statutory construction of 20 U.S.C. § 1415(b)(2), requiring a dispute between a State or local educational agency receiving Federal funds to educate handicapped children and the parent of a handicapped child[1] about that child's "individualized education program" to be resolved by an "impartial due process hearing." *Muth v. Central Bucks School Dist.*, 839 F.2d 113 (3d Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 103, 102 L.Ed.2d 78 (1988); *Robert M. v. Benton*, 634 F.2d 1139 (8th Cir.1980); *Helms v. McDaniel*, 657 F.2d 800 (5th Cir.1981); *Grymes v. Madden*, 672 F.2d 321 (3d Cir. 1982); *Colin K. by John K. v. Schmidt*, 715 F.2d 1 (1st Cir.1983). However, the language of 20 U.S.C. § 1415(b)(2)[2] further provides that "[n]o hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child." In the cases relied upon by the Brewers, the courts construed that phrase to prohibit any employee of the State or local education agency from conducting the "impartial due process hearing." However, that statutory construction does not control the parameters of the constitutional requirements of due process.

Moreover, we do not believe our Legislature intended that the "economic hardship" and "physical or mental condition" exemptions were applicable to this factual situation. Although both exemptions have a long history in our compulsory-school-at-

1. 20 U.S.C.A. § 1401(1) provides:
"(1) The term 'handicapped children' means mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services."

2. 20 U.S.C.A. § 1415(b)(2) provides:
"(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child."

tendance law,[3] the legislative history of a 1983 amendment to the "physical or mental condition" exemption indicates that that exemption was intended to address situations involving terminally ill and mentally retarded individuals. See Hearings on S.B. 2200 before Senate and House Education Committees, Jan. 12 and March 1, 1983, 48th Legislative Session (1983). There is nothing in this record to indicate that Heather fairly comes within the ordinary meaning of those terms.

We conclude that the statutory scheme for granting exemptions to the compulsory school attendance law under Section 15-34.-1-03(3) and (4), N.D.C.C., does not violate due process.

The Brewers next contend that the compulsory-school-attendance law violates their First Amendment right to free exercise of religion and their fundamental right to teach their own children. Both arguments involve the same analysis used in considering the free-exercise issue and have been resolved by this court in prior decisions contrary to the Brewers' position. *State v. Anderson, supra; State v. Patzer,* 382 N.W.2d 631 (N.D.1986), *cert. denied,* 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 50 (1986). Those decisions control these issues, and we decline the Brewers' invitation to reconsider our analysis of those issues.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and LEVINE and, GIERKE, JJ., concur.

MESCHKE, Justice, dissenting.

I regard the fair hearing—due process issue in this case as more difficult than the issue in *State v. Anderson,* 427 N.W.2d 316 (N.D.1988). The exercise of administrative power may require more fairness and impartiality for a First Amendment freedom than for a commercial matter. *See Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). However, I would not reach that issue here.

I would reverse on the free exercise of religion issue for the reasons given in my dissenting opinion in *State v. Anderson, supra.* Once again, the State has wholly failed to show that its compulsory education program would not work if it granted a religious exemption to these defendants. Therefore, I respectfully dissent.

---

**3.** The "physical or mental condition" exemption was originally adopted in 1895 [R.C.1895 § 759] and the "economic hardship" exemption was adopted in 1903 [1903 S.L., ch. 84, § 1].