The **STATE OF NEW YORK** and The City of New York, Petitioners,

v.

The **UNITED STATES DEPARTMENT OF EDUCATION,** Respondent.

**No. 841, Docket 89–4075.**

United States Court of Appeals, Second Circuit.

Argued Feb. 21, 1990.

Decided May 22, 1990.

Marion R. Buchbinder, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Harvey Golubock, Deputy First Asst. Atty. Gen., New York City, of counsel), for petitioner the State of N.Y.

Peter L. Zimroth, Corp. Counsel of the City of New York, New York City (Margaret G. King, Assistant Corporation Counsel, New York City, of counsel), for petitioner City of New York.

Dennis P. Koeppel, Atty., Office of Gen. Counsel, U.S. Dept. of Educ., Washington, D.C. (Edward C. Stringer, Gen. Counsel, Stephen H. Freid, Atty., U.S. Dept. of Educ., Washington, D.C., of counsel), for respondent.

Before FEINBERG, CARDAMONE and MINER, Circuit Judges.

MINER, Circuit Judge:

The State and City of New York (collectively "New York") petition this court to review an April 14, 1989 final decision of the United States Secretary of Education (the "Secretary") ordering repayment of $20,643,510 granted under Chapter 1 of the Education Consolidation and Improvement Act of 1981, Pub.L. No. 97–35, §§ 551–596, 95 Stat. 463–82 (the "Act").[1] The Secretary determined that New York violated section 558(b) of the Act by using the money to supplant, rather than to supplement, non-federal funding for a special education-

---

1. The Act has since been repealed by the Augustus F. Hawkins–Robert T. Stafford Elementary and Secondary School Improvement Amendments of 1988, Pub.L. No. 100–297, tit. I, § 1003(a), 102 Stat. 130, 293.

al program. The Secretary also determined that New York's violation of the supplanting prohibition was not excused under section 558(d) of the Act.

For the reasons that follow, we deny the petition.

## BACKGROUND

The New York City Board of Education commenced the Promotional Gates program in the 1981–82 school year to provide remedial instruction for fourth and seventh grade students who failed to meet minimum standards for reading, writing and mathematics. Rather than advancing automatically to the next grade without essential skills, these students were held back one grade and provided with remedial instruction in smaller classes. All school districts in New York City were required to participate in Promotional Gates under regulations promulgated by the Chancellor of the New York City School District pursuant to his authority to establish and enforce "minimum educational standards and curriculum requirements." N.Y.Educ.Law §§ 2590–h(8), 2590–l (McKinney 1981). These regulations were binding on all community school district superintendents, id. § 2590–f(2), and provided that "[c]entral funding [would] be available to each district for students held-over for failure to meet the required reading and mathematics achievement level." Regulation of the Chancellor No. A–505 (May 26, 1982).

Except for fiscal year 1983, Promotional Gates was funded without any federal funds. The Board of Education's budget for fiscal year 1983 originally allocated, entirely from state and local funds, the $31,502,000 required for the program in the 1982–83 school year. In December 1982, however, the Board of Education was forced to cut $73 million from its overall 1983 fiscal year budget of $3.9 billion to comply with the New York City financial plan approved by the Financial Control Board. See N.Y.Unconsol.Law § 5410(1) (McKinney 1979). The Board of Education expected that the mandated budget cuts would require an increase in class size and a reduction in remedial education programs, which included Promotional Gates.

One month earlier, after the 1983 fiscal year budget for Promotional Gates had been adopted and the program was functioning, Congress had appropriated an additional $20 million for New York under Chapter 1 of the Act to account for adjustments in the 1980 census. Chapter 1 provides financial assistance to plan and operate special programs for educationally deprived children. See § 552 of the Act, 95 Stat. 464. After it was informed of the required budget cuts, the Board of Education applied to the New York State Education Department, which administered the Chapter 1 funds, to use the $20 million supplemental appropriation to fund the Promotional Gates program. The State Education Department determined that the use of Chapter 1 funds for Promotional Gates was permitted by section 558(d) of the Act and authorized the Board of Education's request. As a result, the Board of Education achieved $20 million of the required $73 million budget cut by substituting federal funds for local funds. An accounting at the close of fiscal year 1983 indicated that Promotional Gates had been funded with $20,643,510 in Chapter 1 money and $10,858,490 in non-federal money.

The Inspector General of the United States Department of Education determined after an audit of Chapter 1 funding for Promotional Gates that New York had violated the supplanting prohibition contained in section 558(b) of the Act. Section 558(b) provides:

A local educational agency may use funds received under this chapter only so as to supplement and, to the extent practical, increase the level of funds that would, in the absence of such Federal funds, be made available from non-Federal sources for the education of pupils participating in programs and projects assisted under this chapter, and in no case may such funds be so used as to supplant such funds from non-Federal sources.

95 Stat. 468. The audit concluded that New York had used Chapter 1 funds to

supplant non-Federal funds, because Promotional Gates was a mandatory program that the Board of Education would have provided with or without federal funding. The Inspector General determined that section 558(d), which provides an exemption from section 558(b) if the supplanted funds are "expended for carrying out special programs to meet the educational needs of educationally deprived children," 95 Stat. 469, did not apply because Promotional Gates was "part of the basic level of services that each community school district is mandated to provide."

The Assistant Secretary of Education adopted the Inspector General's conclusions in a final letter of determination and demanded that New York remit $20,643,-510 of Chapter 1 funds. The Assistant Secretary concurred with the Inspector General's finding that, "in the absence of Chapter 1 funds, the [Board of Education] would have used non-Federal funds to meet the costs of the Promotional Gates program activities during FY 1983." The Assistant Secretary also adopted the Inspector General's determination that section 558(d) did not exempt Promotional Gates from the supplanting prohibition, finding that the exemption would apply only if the supplanted funds were actually spent on another program for educationally deprived children.

In its appeal to the Education Appeal Board from the determination of the Assistant Secretary, see 20 U.S.C. § 1234a(b) (1988); 34 C.F.R. Part 78 (1989), New York argued that the supplanting prohibition did not apply at all because Promotional Gates was a "special program" within the purview of section 558(d) of the Act. The Education Appeal Board rejected this contention and affirmed the final letter of determination in a decision dated February 13, 1989. The Secretary of Education adopted the Education Appeal Board's decision, with a modification not relevant to this appeal, in a decision dated April 14, 1989.

New York now contends that the Chapter 1 funds did not supplant, but actually supplemented, non-federal funding for re-medial programs because, in the absence of Chapter 1 funds, the Promotional Gates program would have been eliminated or scaled down to comply with the Financial Control Board's mandate. New York also asserts that the supplanting prohibition in section 558(b) does not apply to "special programs" such as Promotional Gates. Finally, New York challenges the Secretary's determination that section 558(d) permitted the supplanting of non-federal funds only if the funds supplanted were expended on another special program.

## DISCUSSION

■ Appellate review of the Secretary's decision is limited to whether or not it is "supported by substantial evidence and by the application of the proper legal standards." *Bell v. New Jersey*, 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983). We begin by examining the statute to ascertain congressional intent. "If the intent of congress is clear, that ends our inquiry, for the court's duty is to enforce the unambiguously expressed will of congress." *Detsel v. Sullivan*, 895 F.2d 58, 62 (2d Cir.1990). In the event of ambiguity, the Secretary's decision is entitled to considerable deference. When Congress has entrusted administration of a statutory scheme to an executive department, "a court may not substitute its own construction of [the] statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Knapp v. Commissioner*, 867 F.2d 749, 752 (2d Cir. 1989).

■ Chapter 1 is entitled "Financial Assistance to Meet Special Educational Needs of Disadvantaged Children," and, in the "Declaration of Policy" contained therein, Congress stated an intent "to meet the special needs of educationally deprived children." § 552 of the Act, 95 Stat. 464. Section 558(b) compelled New York to use Chapter 1 funds to "increase the level of funds that would, in the absence of such Federal funds, be made available from non-

Federal sources for the education of pupils participating in programs and projects assisted under this chapter." 95 Stat. 468. Despite these express statements of congressional intent in the statute supporting the Secretary's interpretation that section 558(b) prohibited supplanting of non-federal funding for Chapter 1 programs, New York contends that section 558(b) is irrelevant in this case in light of the provisions of section 558(d). This contention, founded in New York's expansive exegesis of legislative history, is unavailing in light of the plain language of the Act. *See Detsel,* 895 F.2d at 62.

■ Recognizing the fungibility of funds in state and local education budgets, Congress attempted to limit the possibility that state and local educational agencies would use Chapter 1 funding merely to maintain existing programs for educationally disadvantaged children while shifting resources to regular educational programs. Thus, section 558(b) required states to use Chapter 1 funds to "increase the level of funds" that otherwise would be expended on programs for educationally deprived children. The precise question at issue, however, is how to determine what New York would have expended on Promotional Gates in the absence of Chapter 1 funding in order to determine whether or not the level of funding for that program was increased by the $20 million supplemental appropriation. When, as here, "congress has not spoken to the precise question at issue, we must defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is 'sufficiently reasonable'." *Detsel,* 895 F.2d at 62 (quoting *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83).

New York contends that the Secretary has failed to identify the source of non-federal funds that would have been used for Promotional Gates in the absence of Chapter 1 funding. The Secretary determined what New York would have provided in the absence of Chapter 1 funding by examining (1) what New York was required to provide according to its own laws and regulations, and (2) what New York actually provided when Chapter 1 funds were not available. We conclude that the Secretary's resolution of this issue was reasonable.

Testimony in the proceedings before the Education Appeal Board indicated that the Board of Education drafted its budget by matching anticipated revenues with anticipated expenditures. During the fiscal year, funds from particular sources were not segregated for use in particular programs. General New York City funds— "whatever dollars happened to be available in bank accounts"—would be expended for all programs and, at the end of a fiscal year, an accounting would allocate actual expenditures to particular sources of funds. Considering this budget process and the fungible nature of money in general, it would be unreasonable to require the Secretary to identify a particular source of funds that would have supported Promotional Gates in the absence of the supplemental Chapter 1 appropriation.

A reasonable indication of what New York would have expended on Promotional Gates in the absence of federal funds is what New York was required to provide under its own laws and regulations. Substantial evidence in the record supports the Secretary's determination that New York was required to provide funding for the Promotional Gates program. The Chancellor's regulations required all school districts to participate in Promotional Gates and provided for central funding by the Board of Education without regard to the ultimate source of the money. New York statutes gave the regulations legally binding effect. New York did, in fact, support Promotional Gates with non-federal funds during the years when Chapter 1 funds were not available. New York has not produced any credible evidence in the record to contradict these findings by the Secretary. In light of the vagaries of the budget process and the fungibility of funds derived from different sources, we find that the Secretary has "articulate[d] a logical basis for [his] decision[ ], including 'a rational connection between the facts found and the choices made.'" *Detsel,* 895 F.2d at 63 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156,

168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). New York plainly did not use the supplemental Chapter 1 appropriation to "increase the level of funds" that otherwise would have been expended for Promotional Gates.

Finally, New York contends that the Secretary's interpretation of section 558(d) is erroneous. Section 558(d) provides:

> For the purposes of determining compliance with the requirements of subsections (b) and (c), a local educational agency may exclude State and local funds expended for carrying out special programs to meet the educational needs of educationally deprived children, if such programs are consistent with the purposes of this chapter.

95 Stat. 469. The Secretary determined that section 558(d) would permit New York to use the $20 million supplemental Chapter 1 appropriation to supplant non-federal funding for Promotional Gates only if the non-federal funds thereby freed were used to fund another program for educationally deprived children, although not necessarily a Chapter 1 program. This interpretation is consistent with the language of the Act, which speaks in terms of non-federal funds "expended for carrying out special programs to meet the educational needs of educationally deprived children." *Id.* New York did not "expend" the $20 million in non-federal funds supplanted by Chapter 1 funds to meet the needs of educationally deprived children. Rather, it used the savings to avoid budget cuts in other programs and has not made any attempt to show that those programs were directed at the needs of educationally deprived children.

## CONCLUSION

The petition for review of the decision of the Secretary of Education is denied.