**Dr. Robert R. FREEMAN, in his official capacity as Superintendent of the De-Kalb County School District, and the DeKalb County School District, Petitioners,**

v.

**Lauro CAVAZOS, in his official capacity as Secretary of the United States Department of Education, the United States Department of Education, and the Office for Civil Rights, Respondents.**

**No. 90–8904.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 30, 1991.

Charles L. Weatherly, Julie J. Jennings, Decatur, Ga., Carter G. Phillips, Sidley & Austin, Washington, D.C., for petitioners.

Marie K. McElderry, John R. Dunne, Jessica Dunsay Silver, U.S. Dept. of Justice, Washington, D.C., for respondents.

Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

The U.S. Department of Education terminated federal education funds to the De-Kalb County (Georgia) School District because DeKalb refused to cooperate with an investigation by the Department's Office of Civil Rights (OCR) into eight parental complaints of discrimination against handicapped children. DeKalb petitions for review of the Department's decision.[1] We affirm.

## I. BACKGROUND

The parties have been litigating this case since 1986. They were before this court once before, see *Rogers v. Bennett*, 873 F.2d 1387 (11th Cir.1989), and now, after two more years of litigation, much has happened but little has changed. DeKalb contends, as it has since the dispute arose, that the federal statutory scheme relating to education of handicapped children deprives OCR of authority to investigate the complaints at issue. The Department as-

---

1. After we heard oral argument in this case the Department informed the court by letter that it had reached a settlement with DeKalb under which it reinstated DeKalb's eligibility for federal education funds effective April 17, 1991. The settlement did not alter the Department's determination that DeKalb was ineligible for federal assistance from September 14, 1990, the date the fund termination order became final, until the effective date of the settlement, and it prohibited DeKalb from using federal funds to meet expenses incurred during the period of ineligibility.

serts in response that DeKalb's failure to cooperate with OCR's investigation is itself sufficient to authorize the Department to terminate federal funds and that DeKalb's reason for not cooperating with the investigation is irrelevant. This basic disagreement over what the case is about has given rise to most, if not all, of the obstacles that have delayed resolution of the important and difficult issue at the heart of this case: the proper relation between the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1400–1485, and § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794.[2]

The Statutes at Issue: the EHA and § 504

Congress enacted the EHA in 1970 "to assure that all handicapped children have available to them a free appropriate education which emphasizes special education and related services designed to meet their unique needs," 20 U.S.C. § 1400(c). The statute established a comprehensive system of federal funding for local special education programs, and in exchange for these funds, state and local educational authorities agree to comply with federal regulations regarding education of the handicapped. In 1975 Congress amended the EHA to supplement its funding provisions with a detailed and exclusive administrative procedure by which parents may challenge the adequacy of the special education programs designed for their children. *See* Education for All Handicapped Children Act, 20 U.S.C. § 1415; *see also Smith v. Robinson*, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984) (holding that the EHA is a parent's exclusive private remedy).

After Congress passed the substantive provisions of the EHA, but before it established the detailed procedural scheme to administer the statute, it enacted the Rehabilitation Act of 1973. *See* Pub.L. No. 93–112, 87 Stat. 355 (codified at scattered sections of 29 U.S.C.). The Rehabilitation Act was primarily a funding statute, but it also

contained an antidiscrimination section that provided:

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

§ 504, 29 U.S.C. § 794.

The Supreme Court has noted that § 504, unlike the EHA, does not require federal grantees to make "fundamental" or "substantial" modifications in existing programs to accommodate the handicapped, *see Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985), but that in some circumstances "refusal to modify an existing program might become unreasonable and discriminatory." *Southeastern Community College v. Davis*, 442 U.S. 397, 412–13, 99 S.Ct. 2361, 2370–71, 60 L.Ed.2d 980 (1979). The Court uses the terms "affirmative action" and "reasonable accommodation" to emphasize this distinction between the rights created by the EHA and § 504. "Affirmative action" refers to the sort of substantial changes to existing programs that are required by the EHA, but not § 504, while "reasonable accommodation" refers to the sort of lesser modifications that § 504 requires. *See Alexander*, 469 U.S. at 301, n. 20, 105 S.Ct. at 720, n. 20.

The Department is authorized to promulgate regulations under § 504 that prohibit state and local officials from discriminating against the handicapped in the provision of educational services, 34 C.F.R. § 104.33, and these regulations are enforced by OCR review of educational institutions. If a state or local government does not cooperate with an investigation, OCR may initiate proceedings to terminate federal financial assistance. 34 C.F.R. § 100.8.

Procedural History

1. *In the Department*

In 1984 OCR began an investigation of this issue.

---

**2.** Our discussion of the statutory scheme summarizes the court in *Rogers'* detailed analysis of

DeKalb's special education program[3] based on parental complaints concerning possible violations of 34 C.F.R. § 104.33(c)(3), which the Department promulgated under § 504. The regulation provides:

> If placement in a public or private residential placement program is necessary to provide a free appropriate public education to a handicapped person because of his or her handicap, the program, including non-medical care and room and board, shall be provided at no cost to the person or his or her parents or guardian.

DeKalb refused to cooperate with the investigation, contending that the regulation was contrary to § 504 and thus could not authorize a lawful investigation, because (1) by requiring residential placement of handicapped children it imposed a obligation to engage in affirmative action, and (2) alleged violations of the right to a free appropriate education (including residential placement) must be addressed through EHA procedures rather than § 504 fund termination proceedings. OCR insisted that DeKalb was obligated to cooperate with the investigation, and, faced with continued resistance, it initiated a fund termination proceeding in 1986.

### 2. *Rogers v. Bennett*

Before a hearing was held in the administrative proceedings DeKalb filed an action in the district court for the Northern District of Georgia, asking that court to declare the residential placement regulation invalid. The district court dismissed the action on the ground that DeKalb had failed to exhaust its administrative remedies, and this court affirmed, holding that DeKalb was required to exhaust administrative remedies before we would address the merits of the case because OCR did not plainly lack authority to enforce the residential placement regulation under § 504. *See Rogers*, 873 F.2d at 1393–96. We also noted that exhaustion of administrative remedies would greatly aid judicial review

of the difficult statutory and regulatory issues presented by the case by providing the court with the "official agency explanation of the regulations and statutes involved." *Rogers* at 1396.

### 3. *On remand*

The remand accomplished little toward resolution of the parties' basic dispute over proper interpretation of the EHA and § 504, for OCR and DeKalb at once retreated into the positions that they had staked out previously. DeKalb once again refused to cooperate with the residential placement investigation, and OCR continued to insist that DeKalb's lack of cooperation provided a sufficient basis for termination of its funds. In an attempt to break the deadlock the Administrative Law Judge presiding over the case suggested that the parties enter into a stipulation that would permit him to decide the case on purely legal grounds, thus exhausting DeKalb's administrative remedies and opening the door to judicial review. The parties reached a stipulation based on one of the eight pending complaints that provided:

1. Complaint Number 04–87–1151 alleges that Respondent, DeKalb ... refused to reimburse the Complainant parent for expenses incurred in connection with a private residential placement.... The Complaint thus alleges a violation of the Section 504 regulations found at 34 CFR 104.33(c)(3).

2. For the present purposes it is assumed that [DeKalb] does not provide residential placements for nonhandicapped students.

3. To date, [DeKalb] has declined to provide data that OCR needs to determine whether there has been a violation of the above-cited regulations.

4. [DeKalb] has stated that its refusal is based on its desire to have a determination of the following issues: (a) Jurisdictional preemption of Section 504 by the Education of the Handicapped Act ... and (b) whether Section 104.33(c)(3)

---

**3.** OCR's proposed investigation originally included the School Districts of Chatham County and the City of Savannah and the Georgia Department of Education, as well as DeKalb. The other entities initially opposed OCR's efforts to investigate and joined with DeKalb in the *Rogers v. Bennett* litigation but subsequently reached settlements with OCR.

of the Section 504 Regulations is valid or ultra-vires as applied to this complaint.

The ALJ ruled in favor of OCR without reaching DeKalb's arguments on the merits, holding that DeKalb's failure to cooperate with the investigation constituted a violation of the Department's regulations and authorized the Department to terminate federal funds. The Department then terminated all federal educational funding to DeKalb, which sought a temporary restraining order in the district court for the District of Columbia. That court denied relief and later dismissed the case because it determined that it did not have jurisdiction to review the administrative proceedings.[4] DeKalb then sought relief in this court, and, after we denied its emergency petition for stay of the administrative action or a writ of mandamus, *Freeman v. Cavazos*, 923 F.2d 1434 (11th Cir.1991), this petition for review ensued.[5]

## II. DISCUSSION

DeKalb contends that we should strike down the residential placement regulation and order the Department to restore its terminated funds because the regulation is beyond the scope of § 504, and that the Department may not terminate funds based on DeKalb's failure to cooperate with an investigation into alleged violations of an invalid regulation. In support of these contentions it makes the same arguments that it has made throughout this dispute: (1) OCR lacks authority to investigate alleged violations of the residential placement regulation because the regulation requires affirmative action, and therefore exceeds the scope of § 504, and (2) the EHA establishes the right to a free appropriate education and thus deprives OCR of jurisdiction to investigate alleged violations of that right.

We reject DeKalb's contentions, and affirm the Department's termination of DeKalb's funds, because the ALJ correctly determined that DeKalb violated the Department's regulation requiring grantees to cooperate with OCR's investigations, and the stipulation that DeKalb entered into in order to exhaust its administrative remedies does not provide a sufficient basis for resolving the fact-intensive issues presented by the parties' dispute over the proper interpretation of the EHA and § 504.

### A. Violation of the Regulation

The ALJ found that DeKalb had violated the Department's regulation requiring grantees to cooperate with OCR's investigations. The regulation at 34 C.F.R. 100.-7(c) authorizes OCR to investigate complaints of violations of the § 504 regulations, and 34 C.F.R. 100.6(c) obligates DeKalb to give OCR access to information relevant to such investigations. Section 602 of Title VI, 42 U.S.C. 2000d–1, made applicable to § 504 enforcement by 29 U.S.C. § 794a(a)(2), provides that compliance with any regulation promulgated under § 504 may be obtained

> by the termination of or refusal to grant or to continue assistance under [a federal funding program] to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement....

42 U.S.C. 2000d–1. The ALJ made the findings required by the statutes and regulations, and those findings were not clearly erroneous. Thus, DeKalb can prevail only if it can establish that the residential placement regulation requires affirmative action in violation of § 504.

### B. Insufficiency of the stipulation

We reject DeKalb's contention that the residential placement regulation is invalid under § 504. DeKalb's stipulation that it does not provide residential placements to nonhandicapped children is not a sufficient basis for reaching its assertions concerning the validity of the regulation, for whether a measure constitutes reasonable accommodation or affirmative action can only be resolved in reference to the facts of a given case.

---

4. *See Freeman v. Cavazos,* 756 F.Supp. 1 (D.D.C. 1990).

5. We have jurisdiction over DeKalb's petition for review under 20 U.S.C. 1234g(b).

Because DeKalb chose to enter into the stipulation rather than to cooperate with OCR's investigation OCR still has neither gathered information relating to DeKalb's treatment of handicapped children nor applied the residential placement regulation to the eight parental complaints. In the absence of a factual background or application of the regulation to concrete cases we must reject DeKalb's contention that the residential placement regulation requires impermissible affirmative action rather than permissible reasonable accommodation.

The Supreme Court noted in *Davis, supra,* that "[w]e do not intend to suggest that the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons will always be clear." 442 U.S. at 412, 99 S.Ct. at 2370. The inquiry is fact-intensive and focuses on whether the costs and other burdens imposed by the proposed modification to an existing program amount to reasonable accommodation of the handicapped or a substantial modification of the program. *See Id.* at 412–13, 99 S.Ct. at 2370–71; *see also Alexander, supra,* 469 U.S. at 300, 105 S.Ct. at 720 ("*Davis* thus struck a balance between the statutory rights of the handicapped ... and the legitimate interests of federal grantees ...: while a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.")

We cannot apply this fact-bound balancing test to the abstract controversy before us. Until OCR has investigated the eight pending complaints, uncovered the facts relating to DeKalb's treatment of handicapped children, applied the residential placement regulation to the particular facts of those cases, and decided whether DeKalb must take some action to modify its existing special education program, we cannot say whether the required modification, if any, will be "reasonable" or "fundamental." Because DeKalb and OCR have not reached the merits of the eight parental complaints, the record before us provides no information about residential placement: how much it costs, how difficult it is to administer, how many children would qualify for it under the regulation, and a number of other factors that are highly relevant to the balancing test that *Davis* established. Thus, we reject DeKalb's assertions regarding the validity of the residential placement regulation.

We also decline to follow the First Circuit's dictum in *Colin K. v. Schmidt,* 715 F.2d 1, 9 (1st Cir.1983) that reasonable accommodation can never require residential placement. The court in *Colin K.* held, based on its decision in *Smith v. Cumberland School Committee,* 703 F.2d 4 (1st Cir.1983), *aff'd sub nom. Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), that the EHA is a parent's exclusive remedy for violations of rights established by the EHA, but it also suggested that the plaintiffs' theory that reasonable accommodation under § 504 may require individual attention in the form of residential placement "breaks down where the individualized attention requires the payment of substantial funds for residential placement for handicapped children." 715 F.2d at 9. The First Circuit formed this opinion with the benefit of a record developed through lengthy EHA proceedings on the merits of the underlying claim of discrimination. In the case before us, the record contains no information about the financial and administrative burdens imposed by residential placement.

The insufficiency of the stipulation is also fatal to DeKalb's assertion that the EHA deprives OCR of jurisdiction over parental complaints arising from failure to provide a free appropriate education. The Supreme Court held in *Smith v. Robinson* that a *parent's* private remedy under the EHA is exclusive, *see* 468 U.S. at 1009, 104 S.Ct. at 3467; *Rogers* at 1395, but neither *Smith* nor *Rogers* decided whether the EHA's procedural scheme for parental complaints similarly limited *governmental* actions. *See Rogers* at 1395. This issue is a difficult one, because Congress provided little guidance on the proper interplay between § 504 and the 1975 amendments to the EHA that established that statute's procedural scheme. Did Congress intend

for the EHA procedures to be the sole means of enforcing the rights of handicapped children to a free, appropriate education, or did it establish overlapping schemes of enforcement: one for parental litigants under the EHA, the other for the Department's supervisory investigations under its § 504 regulations? The answer is far from obvious, and both parties advance good arguments in support of their positions. In the absence of a fully developed record and application of OCR's procedures to actual cases of alleged discrimination we cannot say that the EHA deprives OCR of jurisdiction to investigate the complaints of discrimination at issue in this case. Thus, we affirm the Department's termination of DeKalb's federal educational funds for failure to cooperate with OCR's investigation.

AFFIRMED.