**STATE OF NEW YORK, Petitioner,**

v.

**Richard RILEY, Secretary of the United States Department of Education, Respondent.**

**No. 1044, Docket 94–4137.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1995.

Decided April 24, 1995.

Michael Brustein, Brustein & Manasevit, Washington, DC, for petitioner.

Lynette A. Charboneau, U.S. Dept. of Educ., Office of Gen. Counsel, Washington, DC, for respondent.

Before: WINTER and LEVAL, Circuit Judges, and SAND, Senior District Judge.*

PER CURIAM:

Certain federal programs in aid of state educational efforts, such as the Vocational Education Act ("V.E.A.") of 1963, as amended (20 U.S.C. § 2301 et seq.) and the Carl D. Perkins Vocational Education Act ("Perkins Act") (20 U.S.C. § 2301 et seq. (1988)) provide that federal contributions should not exceed the amounts which the states themselves expended for such purposes. This concept is sometimes described as a "maintenance of effort" or "matching" requirement. When audits disclose that the federal contribution exceeds the states' allowable expenditures, the states must refund the excessive amounts received.

This petition for review challenges a determination by the Secretary of Education as to the amount of money which New York State must refund to the United States Department of Education as the result of the disal-

---

* The Honorable Leonard B. Sand, Senior District Judge for the Southern District of New York, sitting by Designation.

lowance of certain salary and related costs which New York improperly charged as V.E.A. expenditures. This Court has jurisdiction pursuant to 20 U.S.C. § 1234(g) which provides that the recipient of funds under an applicable federal education program may petition for judicial review of a final decision of the Secretary.

The Administrative Law Judge (ALJ), whose ruling the Secretary adopted as final, held that New York State failed to establish that, for the year 1986, the State satisfied the requirement that it match a federal educational grant for administrative expenses with equal allowable state expenditures. This requirement was contained in 20 U.S.C. § 2462.[1] After holding hearings, the ALJ determined that the State had claimed $159,502.46 for V.E.A. expenditures which claims were disallowed based on a finding that those expenditures were not shown to have been incurred for proper V.E.A. purposes. This determination is not challenged in this petition for review. Rather the issue raised herein relates to the ALJ's further determination that the consequence of the $159,502.46 disallowance is that $79,751.23 must be refunded by the State since that figure represents the amount of federal contributions not matched by equal state expenditures. The State contends that it is entitled to a greater reduction in the amount which it must refund because it is entitled to equitable offsets, a concept which evolved from two prior administrative proceedings, *Appeal of the State of New York*, U.S. Dep't of Educ., Docket No. 26–226–86 (June 27, 1989) (hereinafter "New York Remand") and *Consolidated Appeals of the Florida Dep't of Educ.*, U.S. Dep't of Educ., Docket Nos. 29–293–88 & 33–297–88 (Sept. 10, 1990), (hereinafter "Florida Remand").

In the *New York* and *Florida Remands*, the amount of monies the states were ordered to refund was offset by monies that the states had expended which would have been allowable if the states had initially sought to charge these expenditures to the

federal grant but which had not been so charged ("overmatch" costs). Petitioner claims that offsets were allowed even as to costs which did not qualify as "overmatch" costs and that a consistent application of these precedents would entitle it to an equitable offset so long as costs not previously charged to the grant were incurred by the State for educational purposes consistent with the federal programs, regardless of whether the State could document and prove that they were allowable costs and therefore constituted "overmatch" costs.

In the *New York* and *Florida Remands*, the Secretary rejected the claims of the Assistant Secretaries that any equitable offsets would be inconsistent with the statutory framework. In both these cases, the states proved the existence of "overmatch" costs and these were allowed as offsets. Petitioner asserts that in the *Florida Remand*, one item (expenditures for meetings of the State Vocational Instructional Materials Council) was allowed as an offset although Florida was not required to document that this item constituted "overmatch" costs.

Here, the ALJ recognized and discussed at length the doctrine of equitable offset and found that the Secretary's decisions in *Florida* and *New York* "are still controlling here." The ALJ observed that "the tribunal will allow such an offset if the evidence, in the tribunal's view, justifies such consideration." *Application of the N.Y. State Dep't of Educ., Recovery of Funds Proceeding*, U.S. Dep't of Educ., Docket No. 90–70–R, at 93 (Apr. 21, 1994).

After an extensive review of the facts and claims, the ALJ concluded that the evidence submitted by the State did not demonstrate any overmatch and that finding is not challenged in this appeal.

However, the disallowance of $159,502.46 of claimed expenditures created an overmatch for the first time because the State was only required to match the allowable

---

1. For the relevant time period, 1986, § 2462 provided in pertinent part:

"The Federal share for each fiscal year shall not exceed—* * *

(2) 50 percent of the costs of administration of vocational education services and activities of eligible recipients."

§ 2462 was repealed by Publ.L. No. 101–392, § 501(a)(1), 104 Stat. 830 (1990).

federal contributions. Reduction in the amount of the federal grant automatically creates an over-match where federal and state expenditures are previously in equilibrium. The ALJ found that one half of the disallowed expenditures, i.e., $79,751.23, must be refunded thereby restoring the balance between the state and federal expenditures.[2]

### Discussion

The doctrine of equitable offset, as the name itself reflects, embodies concepts of equity, not entitlement as a matter of right. Where the Secretary has disallowed certain expenditures charged against a grant but it appears that a state has incurred other expenditures which would have been allowable had they been charged to the grant but which were not so charged, the Secretary has, in the New York and Florida Remand cases, deemed it equitable to permit the state to offset against the disallowed costs the "overmatch" costs incurred by the state. When this occurs, the net result is that no federal funds are disbursed for purposes or in amounts not sanctioned by the statute.

Where, however, as here, the state is unable to document that it has incurred any "overmatch" expenditures, allowing an offset for funds expended for educational purposes not qualifying under the grant entails quite different policy considerations. Unless the state can show that it expended monies which would have been allowable had they been initially charged to the program before it may claim such expenditures as an offset against disallowed expenditures, the underlying concept of there being equal allowable federal-state contributions to the program will be undermined.

We find unpersuasive petitioner's claims that the holding herein was a significant change of position by the Secretary which was inadequately explicated. First, it is far from clear that the New York and Florida Remand cases allowed equitable offsets for other than "overmatch" costs. Second, petitioner can hardly assert, and does not assert, that it relied on the availability of such offsets and consequently incurred disallowable expenses. Such an assertion would significantly impair the integrity of the state-federal matching grant structure. Rather, petitioner asserts prejudice because, in the belief that proof of matching would not be required until the issue was raised by the ALJ at a hearing in August, 1993, it failed to retain documentation for the fiscal year in question, 1986, adequate to satisfy its burden of proof. We find this to be unpersuasive; even if petitioner were correct in its claim that prior precedent does not establish proof that expenditures were "matching costs" as an absolute prerequisite to equitable offset, at a minimum they establish that "overmatching" was highly relevant to the grant of this equitable relief.

Finally, the determination by the Secretary that, in the exercise of equitable discretion, petitioner was entitled to an offset of only one-half of the disallowed expenditures, thus bringing federal and allowed state expenditures into equilibrium, is an agency's interpretation of its own prior decisions and a reasonable construction of the statutory scheme. It is therefore entitled to considerable deference by this Court. Chevron, USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81

---

**2.** The concept of maintaining equilibrium between allowable state expenditures and the amount of federal contributions may be illustrated by envisioning a bar graph having two bars of equal height, one representing the claimed state expenditures prior to disallowance, the other representing the amount of federal contributions. If the bar representing claimed state contributions is diminished by an amount representing the disallowance and no further adjustment is made, the bar representing federal contributions is higher than the bar representing state contributions by the amount of the disallowance. What is needed to restore the bars to equal height is the transfer, from the bar representing federal contributions to the bar representing state expenditures after the disallowance, of an amount equal to one-half the disallowance. This is accomplished by requiring the state to refund to the federal government an amount equal to one-half the disallowance. The consequence of the refund is of course to increase by that amount the state's expenditure for allowable educational purposes. Accordingly, the bar representing state expenditures after the disallowance is increased by that amount and the bar representing federal contributions is decreased by a like amount, causing the bars to be of equal height.

L.Ed.2d 694 (1984); *New York v. United States Dep't of Educ.*, 903 F.2d 930, 933 (2d Cir.1990).

The scope of review by this Court is limited to a determination whether "the findings are supported by substantial evidence and reflect application of the proper legal standards." *Bennett v. New Jersey*, 470 U.S. 632, 646, 105 S.Ct. 1555, 1563, 84 L.Ed.2d 572 (1985). We perceive no valid basis for challenge to the Secretary's determination.

### Conclusion

The petition for review of the decision of the Secretary of Education is denied.