[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17648
_____

Agency Docket No. 12-35-R


GEORGIA DEPARTMENT OF EDUCATION,

Petitioner,

versus

UNITED STATES DEPARTMENT OF EDUCATION,

Respondent.

_____

Petition for Review of a Decision of the
Department of Education
_____

(February 28, 2018)

Before JULIE CARNES and JILL PRYOR, Circuit Judges, and CONWAY,[*]
District Judge.

---

[*] Honorable Anne C. Conway, United States District Judge for the Middle District of
Florida, sitting by designation.

CONWAY, District Judge:

The Georgia Department of Education petitions the Court to review the final decision of the Secretary of Education ("the Secretary") ordering Georgia to repay approximately $2.1 million of federal grant funds to the United States Department of Education. The Secretary denied Georgia an equitable offset for the amount of funds due to be repaid following an audit. For the reasons that follow, we deny the petition to review the Secretary's decision.

## I.    BACKGROUND

The United States Department of Education ("the Department") awarded a $10.7 million grant to the Georgia Department of Education ("Petitioner") to be distributed to local education entities in 2007 under the 21st Century Community Learning Centers grant program, which targeted students at high-poverty, low performing schools. Following the Department's award of the federal grant, Georgia held a competition to award subgrants to local education agencies and community-based non-profits that provide academic enrichment opportunities such as tutorial services to help students during non-school hours. The competition required an eligible entity to submit an application, and Petitioner used a peer-review process to award the subgrants.

Following receipt of a "suspicious activity report" in May 2007 from a bank for one of the local grant recipients, state auditors ultimately uncovered evidence

2

of a "complex fraud scheme" involving several Georgia Department of Education employees as well as members of the independent external peer review panel and some of the subgrant recipients who manipulated the outcome of the grant competition. As "a result of apparent collusion and management override of internal controls," the auditors found the grant competition was "severely flawed."

The auditors determined that three of Petitioner's employees had inappropriately overridden internal controls and intentionally altered the results of the independent external peer-reviewed competition so that seventeen lower-scoring applicants received subgrants even though other, unfunded applicants had received higher scores. The auditors noted that the highest-ranking applicants, as determined by the independent external peer review panel, received reduced funding and, in some cases, no funding. Petitioner's internal audit found employees had manipulated the outcome of the 2007 grant competition in favor of certain community-based organizations who were connected to one of Petitioner's employees.[1]

In May 2012, the Department responded with a preliminary determination letter finding that Petitioner had failed to follow its own procedures when conducting the grant competition, and the harm to the federal interest was the total

---

[1] Associate Superintendent Cassandra Herring used her position for personal gain through contractual arrangements with four grant recipients who agreed to compensate her for the awarding of the grant and/or program evaluation required by the grant. App. 98. The United States Attorney subsequently entered into a non-prosecution agreement with Herring, who agreed to repay $40,000 to the Department. Suppl. App. 39.

3

amount of funds awarded to sixteen entities that did not qualify for funding and a seventeenth entity that received more funds than the amount for which it qualified. The Department demanded that Petitioner refund the full $5.7 million diverted to the lower-scoring programs; the parties subsequently stipulated to the reduced amount of $2.1 million based on the relevant statute of limitations.

Petitioner appealed the Department's $2.1 million refund demand to the Office of Administrative Law Judges, requesting an "equitable offset" for the entirety of the amount demanded, arguing it had spent non-federal grant funds that aided beneficiaries in the same manner Congress had intended in enacting the legislation governing the grant program. The Department objected to any equitable offset or reduction because of the extent of the fraud. The administrative law judge denied Petitioner's request for an equitable offset, as did the Secretary of Education. Petitioner seeks review of the agency's final decision, arguing that the Secretary erred by denying Petitioner any equitable offset.[2]

## II.    DISCUSSION

Petitioner argues the Secretary's consideration of the underlying fraud scheme as reason to deny the equitable offset violates the statute's "proportional-

---

[2] We have jurisdiction to review the Secretary's decision concerning recovery of grant funds from the state of Georgia as the United States Court of Appeals for the circuit where the recipient is located. 20 U.S.C. § 1234g(b); *Freeman v. Cavazos*, 939 F.2d 1527, 1531 n.5 (11th Cir. 1991).

to-harm" recovery rule and invokes what Petitioner characterizes as an "unclean-hands" defense without a principled explanation for the change in course.

### A. Standard of Review

This Court reviews the Secretary's decision to determine whether the Secretary's findings are supported by substantial evidence and whether they reflect the application of proper legal standards. *Bell v. New Jersey*, 461 U.S. 773, 792, 103 S. Ct. 2187, 2198, 76 L. Ed. 2d 312 (1983); *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 666, 105 S. Ct. 1544, 1550, 84 L. Ed. 2d 590 (1985); *see* 20 U.S.C. § 1234g(c) (factual findings are conclusive "if supported by substantial evidence"). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is "more than a scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (internal quotation marks omitted). The "limited" substantial evidence review "precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The court may set aside the Department's final decision only if is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "exceedingly

deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (quotation marks omitted). An agency's decision will not be overturned as long as the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866, 77 L. Ed. 2d 443 (1983) (the standard is "narrow, and a court is not to substitute its judgment for that of the agency"). Agency actions are arbitrary and capricious when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (quoting *Alabama–Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007)).

Applied in the context of disallowed educational grant costs, "[w]here the Secretary has properly concluded that funds were misused under the legal standards in effect when the grants were made, a reviewing court has no independent authority to excuse repayment based on its view of what would be the most equitable outcome." *Bennett v. New Jersey*, 470 U.S. 632, 646, 105 S. Ct.

6

1555, 1563, 84 L. Ed. 2d 572 (1985); *Wyoming v. Alexander*, 971 F.2d 531, 536 (10th Cir. 1992) (recognizing that judicial review of the agency's decision to deny a partial reduction of a refund demand for vocational education grant funds is "narrow and deferential").

### B. *Equitable Offset*

The General Education Provisions Act ("GEPA") requires a recipient of a federal education grant, such as the 21st Century Community Learning Centers program, who is "determined to have made an unallowable expenditure, or to have otherwise failed to discharge its responsibility to account properly for funds," to return funds in "an amount that is proportionate to the extent of the harm its violation caused to an identifiable Federal interest associated with the program under which the recipient received the award." 20 U.S.C. § 1234b(a)(1). Identifiable federal interests relevant here include serving only eligible beneficiaries, providing only authorized services or benefits, complying with expenditure requirements and conditions, preserving the integrity of application requirements, and maintaining accountability for the use of funds. 20 U.S.C. 1234b(a)(2)[3].

---

[3] Although GEPA allows for the refund amount to be reduced by an amount that is "proportionate to the extent the mitigating circumstances caused the violation," Petitioner has not argued that any statutorily-defined "mitigating circumstances" apply in this case. *See* §§ 1234b(b)(1), (2) (defining "mitigating circumstances" as state's reasonable reliance on erroneous or delayed guidance from the Department or a court order).

The concept of "equitable offset" is not defined or addressed in GEPA, but is a recognized equitable remedy that has been applied in refund cases since the late 1980's on a case-by-case basis at the discretion of the finder of fact. *See, e.g., New York v. Riley,* 53 F.3d 520, 522 (2d Cir. 1995) (denying petition for review of an equitable offset of refund due for salary costs improperly charged to vocational education grant); *Tangipahoa Parish Sch. Bd. v. U.S. Dep't of Educ.*, 821 F.2d 1022, 1030-31 (5th Cir. 1987) (granting petition for review by school district concerning expenditures which failed to comply with federal bilingual grant requirements and remanding to the Department for reconsideration of the appropriate refund amount in consideration of "equitable factors"); *Consol. Appeals of Fla. Dep't of Educ.*, 69 Educ. Law Rep. 1373, 1393-94, 1990 WL 357910, at *24 (ED.O.H.A. June 26, 1990) (noting that court and Department of Education precedents supported the concept of equitable offset as an available remedy); *cf. Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 674, 105 S. Ct. 1544, 1554 84 L. Ed. 2d 590 (1985) (remanding to court of appeals for the calculation of the amount to be repaid following determination that state had misused grant funds).

Based on Department of Education precedent, a state is not entitled to an equitable offset as a matter of right. *Riley*, 53 F.3d at 522. The proponent seeking the equitable offset bears the burden of proof and must establish its case by the

preponderance of the evidence. *Application of Ariz. Dep't of Educ.*, Dkt. No. 06-07-R, 2010 WL 3378298 (ED.O.H.A. Aug. 12, 2010) (allowing an equitable offset amount reached by the parties, based on additional funds that the state could prove it had spent for special education programs from which a refund was due). When the Secretary has disallowed certain expenditures charged against a grant but a state has incurred other expenditures which would have been allowable had they been charged to the grant, the Secretary has "deemed it equitable" to allow the state to offset against the disallowed costs the other costs incurred by the state. *Riley,* 53 F.3d at 522. "[T]he net result is that no federal funds are disbursed for purposes or in amounts not sanctioned by the statute." *Id*. "[F]ederal appellate courts reviewing the Secretary's decisions [have] inject[ed] the doctrine of fairness, including application of [an] equitable offset or credit, where state educational services which support the legislative intent are actually performed, even though they were not originally charged to the appropriate federal grant." *Appeal of the State of New York*, 63 Ed. Law Rep. 1183, 1989 WL 296753 (ED.O.H.A. Aug. 29, 1989).

Here, the Secretary summarized the factors or "[c]ircumstances that may affect the equitable offset determination" based on previous agency cases, including "the scope of the violation, whether the violation was intentional or an honest mistake, and the efforts by the appellant to mitigate the violation's harm."

App. 134. The Secretary declined to grant Petitioner's request for equitable offset because he found the "nature and scope" of Petitioner's violation was "too serious to warrant an equitable offset" where the fraud perpetrated by state employees resulted in "the misuse of $5.7 million in a single fiscal year." *Id.* at 135. The Secretary rejected Petitioner's arguments the violation was not severe because "only" three employees had participated in the scheme; he found Petitioner "need not have adopted a fraudulent scheme at a high level," or incorporated dozens of employees, for the violation to be severe when it was an act of intentional fraud, and not an honest mistake.

While Petitioner had attempted to mitigate the harm, the Secretary found there was little Petitioner could do because by the time it acted the entire amount of grant money had been improperly expended, and an important objective of the grant program was to make the funds available to "properly chosen subgrantees." The "violating individuals fraudulently undermined the subgrant competition, thereby frustrating key objectives" of the grant program. The harm to the federal program was not significantly lessened because the seventeen ineligible grant recipients may have used the funds to aid the federal program's intended beneficiaries—students at high-poverty, low-performing schools—as Petitioner claimed. The Secretary denied Petitioner's request for an equitable offset because to allow otherwise "would be inequitable to future potential subgrantees."

Petitioner does not dispute that a complex fraud scheme involving its employees led it to award $5.7 million in grant funds to entities that were not qualified to receive such funds under the terms of the 21st Century Community Learning Centers grant program. Petitioner instead argues the Secretary acted arbitrarily and capriciously in denying an equitable offset because he ignored the "proportional-to-harm" language of § 1234b and based his decision on the nature and scope of the underlying fraud scheme, which Petitioner contends is "irrelevant" to an equitable offset determination. Petitioner argues the measure of the Department's recovery in a grant refund action is not the total amount of the disallowed expenditures, but rather is an amount "proportionate to the extent of the harm" caused to the identifiable federal interest of the program, and *requires* the Secretary to consider any non-federal expenditures that ameliorate the Department's "harm." Petitioner essentially contends § 1234b's proportional-to-harm recovery rule required the Secretary, once he determined Petitioner owed a refund, to accept evidence that Petitioner ameliorated the "harm" to the grant program from the state's own funds expended in pursuing the same legislative goals intended by the grant. Petitioner also argues the Secretary acted arbitrarily and capriciously when he adopted an "unclean hands" analysis without providing a principled explanation for the decision. Petitioner argues the decision goes against decades of Department precedent in allowing equitable offset claims.

11

In support, Petitioner argues that until the Secretary's 2014 decision in *Application of the Pennsylvania Department of Education,*[4] the Department had consistently decided equitable-offset claims by evaluating only whether the relevant grant recipient had made previously uncredited expenditures that furthered the purposes of the underlying grant. Petitioner argues that neither the denial of the equitable offset by the Secretary, nor the Third Circuit's decision declining to review the Secretary's decision provide a principled explanation for the denial of the equitable offset. The Department specifically acknowledged during the appeal that the *Pennsylvania* case was the first time it had objected to the grantee's request for an equitable offset based on the nature of the grantee's misconduct.[5]

The Third Circuit denied Pennsylvania's petition for review challenging the Secretary's denial of an equitable offset following an audit of the Philadelphia School District which revealed widespread misuse of $7 million in federal funds. *Pa. Dep't of Educ. v. Sec'y U.S. Dep't of Educ.*, 643 F. App'x 89, 90 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 282 (2016).[6] In denying the state's request, the

---

[4] *Application of Pa. Dep't of Educ.*, Dkt. No. 11-33-R (ED.O.H.A. Dec. 29, 2014). *See* Department of Educ. Br. Add. 1; available at http://oha.ed.gov/secretarycases/20110330R-S.pdf.

[5] *Pa. Dep't of Educ. v. Sec'y U.S. Dep't Educ.*, 643 F. App'x 89, 91 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 282 (2016). Although the improper expenditures in a prior case, *Application of Arizona Department of Education,* Dkt. No. 06-07-R, 2010 WL 3378298 (ED.O.H.A. Aug. 12, 2010), were indisputably the result of employee fraud in falsifying travel and vendor invoices totaling $212,436, the Department disputed only the *amounts* to be offset against the refund, and not the state's entitlement to an offset; the Secretary ultimately allowed a credit of $165,243.

[6] The unpublished disposition was not an opinion of the full court and under the local appellate rules did not constitute binding precedent. *Pa. Dep't,* 643 F. App'x at 92 (citing U.S.

Secretary had concluded an equitable offset was not warranted based on the audit report containing "evidence of a complete breakdown in the basic budgetary practices required by Federal grant regulations," including the school district's improper use of federal grants to supplant state and local funding, inadequate enforcement of policies and procedures for processing financial transactions, and lack of written policies and procedures for various fiscal processes. *Id*. at 91.

The Secretary had emphasized that the fiscal oversight failures of such magnitude were "too egregious" and "too widespread" to merit an equitable offset. *Id.* The Secretary also had not found the school district's corrective actions taken after receiving the final audit report adequately counteracted the mismanagement and improper expenditures because, absent the audit, it was unclear when or whether these practices would have been addressed. *Id*. The Third Circuit panel held that the Secretary's fact-driven decision was not an arbitrary departure from established precedent or an abuse of discretion, noting that the court "must give deference to an agency's interpretation of its own decisions unless the proffered interpretation is capricious." *Id.* (citing *CBS Corp. v. F.C.C.*, 663 F.3d 122, 143 (3d Cir. 2011)). As the court explained, "the very name 'equitable offset' suggests that the remedy is grounded in fairness, and the Secretary provided a thorough

Ct. of App. 3rd Cir. App. I, Internal Operating Procedures 5.7) ("Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.")

13

evaluation of why the egregiousness of the underlying violations in this case did not merit such a remedy." *Id.* (holding the Secretary's decision was not an abuse of discretion because it was based on a "case-by-case, totality of the circumstances analysis"); *see also Riley*, 53 F.3d at 522 (rejecting petitioner's argument that the Secretary's decision was a "significant change of position" which was "inadequately explicated" because prior Department decisions allowed equitable offsets in limited cases and the petitioner could not assert that it had relied on the availability of such offsets).

To accept Petitioner's position that the Secretary cannot consider the facts underlying the misuse of funds would effectively remove the Secretary's discretion and convert an equitable offset into a matter of right—anytime the Department determined a refund of misused funds was due, the Secretary would be required to credit the state for any non-federal funds expended for purposes of the grant and ignore the underlying facts that led to the misuse of funds. No case cited by Petitioner necessitates such a result, nor is that result supported by the principles cited *supra* which underpin the deference the Court affords to an administrative agency's decisions. *See, e.g., Sierra Club*, 526 F.3d at 1360 (noting the arbitrary and capricious standard is "exceedingly deferential").

Here, the Secretary properly considered the circumstances of the underlying fraud in Petitioner's case in denying the equitable offset remedy, which he noted is

14

to be determined based on agency precedent "on a case by case basis at the discretion of the trier of fact." The Secretary determined that the nature and scope of the violation was "too serious to warrant an equitable offset" given that Petitioner's employees participated in a complex fraud scheme which led to the state improperly awarding $5.7 million to seventeen subgrantees who did not qualify to receive those funds. As the Secretary determined, the violations unquestionably harmed federal interests because "an important objective" of the grant program is to make "grant money available to properly chosen subgrantees." We do not find the Secretary's decision to deny the equitable offset based on the nature and scope of the complex fraud scheme initiated by Petitioner's employees to be arbitrary, capricious or an abuse of discretion. Substantial deference must be shown to the Secretary's decision ordering the state department of education to refund disallowed grant funds. The Supreme Court has made it clear that "it is not within our province to substitute our view of a more equitable remedy for the action of the Secretary." *Fla. Dep't of Educ. v. Bennett*, 769 F.2d 1501, 1502 (11th Cir. 1985) (per curiam) (citing *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 672, 105 S. Ct. 1544, 1563, 84 L. Ed. 2d 590 (1985)).

**III.**

For the foregoing reasons, the petition for review of the decision of the Secretary of Education is denied.

**PETITION DENIED.**